ATTORNEY GENERAL *vs.* EVERETT S. OLSON & others,
trustees.

Plymouth.    February 5, 1963. — June 4, 1963.

Present: WILKINS, C.J., SPALDING, WHITTEMORE, KIRK, & REARDON, JJ.

*Trust,* Removal of trustee, Charitable trust, Accounting by trustee, Dele-
gation of powers by trustee, Investments, Discretionary powers of trus-
tee, Purchase of property.    *Charity.*

Removal by a judge of the Probate Court of trustees of a testamentary
charitable trust was not justified by the mere facts that during the first
three years of the trust the trustees failed to file probate accounts on an
annual basis as provided by G. L. c. 206, § 1, where at the end of such
period they filed and procured the allowance of three probate accounts
covering such period, that the trustees failed to include real estate pur-
chased by them in schedule C of their probate accounts, and that the
trustees, after forming, with court approval, a charitable corporation to
which the assets of the trust were transferred to carry out the trust,
did not file probate accounts, where they filed annual reports of the assets
and operation of the corporation with the Attorney General as required
by G. L. c. 12, § 8F.    [195–197]
Trustees of a testamentary charitable trust voluntarily serving without com-
pensation, who entered into an agency agreement with a bank whereby
it would act as custodian of the trust securities, advise the trustees as to

investments, and handle the bookkeeping of the trust, and who were consulted about and approved the investments made, did not improperly delegate their duties as trustees to the bank; a clause in the agency agreement providing that "All orders, directions, [and] approvals" of the trustees should be by their "unanimous action" did not enhance the powers of the bank. [197]

Removal by a judge of the Probate Court of trustees of a testamentary charitable trust authorized by the will to "establish such By-Laws and Rules for the governance of their conduct and the safety of the fund as they deem wise" was not warranted by the mere fact that they chose to act only by unanimous vote. [197–198]

Where trustees of a testamentary charitable trust authorized "to hold, manage, invest and reinvest" the corpus of the trust, which originally consisted only of shares of stock of one corporation, sold the greater part of the shares at a substantial loss and invested the proceeds of the sale in a diversified list of stocks and bonds, such sale and investment did not warrant removal of the trustees by a judge of the Probate Court, even though, due to subsequent events, the worth of the trust fund would have been greatly enhanced by a retention of the stock sold. [198]

Removal by a judge of the Probate Court of trustees of a testamentary trust created to establish a museum, on the grounds that in a period of about ten years following the trustees' purchase of real estate for the museum they had allowed the property to become "unproductive," had not disposed of it nor used it for the trust purposes, and had delayed unduly in proceeding with the construction of the museum, was not warranted where it appeared that the property was suitable and the cost of its maintenance slight, that the will authorized the trustees to accumulate the income of the trust fund "to any extent they think wise before going forward with this undertaking," that when the property was purchased the trust fund was insufficient to construct the museum, that the trustees from time to time sought advice from the Attorney General as to the proper time to commence construction, that some nine years after the purchase the trustees, deeming the trust fund to be of sufficient size, contracted with an architect to prepare plans and specifications, and that any delay in construction thereafter could not be attributed solely to the trustees. [198–200]

Upon a petition by the Attorney General for removal of trustees of a testamentary trust created for the establishment of a museum, a finding by the judge of the Probate Court that the trustees had acted with bad faith with respect to a proposed purchase by them for the museum of property owned by one of them was not warranted where it appeared that ten years before the proposed purchase they had bought other land for the museum, that they had petitioned the court for approval of the proposed purchase and had presented all relevant facts pertaining to the other land already purchased first to the Attorney General and then to the court at the hearing on the petition, that an independent appraiser for the trustees had valued the property proposed for purchase in excess of the price asked by the owner and an appraiser called as a witness by the Attorney General had found such price reasonable, and that the petition for approval of the purchase had been denied. [200–201]

PETITION filed in the Probate Court for the county of Plymouth on April 29, 1959.

The case was heard by *Stone*, J.

*John Barr Dolan* for the respondents.

*Paul B. Sargent*, Assistant Attorney General, for the petitioner.

SPALDING, J.   This is an appeal from a decree of the Probate Court for Plymouth County ordering the removal of the trustees under clause Fourth of the will of Henry Lawton Blanchard and the appointment of successor trustees.   The evidence is reported and the judge made extensive findings of fact.

The challenged decree was entered on a petition brought by the Attorney General seeking the removal of the trustees. After the trustees' appeal was entered in this court the Attorney General filed a brief in support of the decree. Shortly before the arguments the Attorney General (who was the successor in office to the Attorney General who had brought the petition and had filed the brief) moved to withdraw the brief filed by his predecessor.   This motion was denied.   When the appeal was argued the assistant attorney general representing the Attorney General informed us in substance that the Attorney General did not join in the brief filed by his predecessor and that he did not desire to argue orally in support of the decree.   When asked by the Chief Justice if this meant that the Attorney General was confessing error, he replied that he was doing so to the extent that such a course was possible, having in mind that the decision below involved matters which were to some extent within the discretion of the trial judge.   Notwithstanding the position of the present Attorney General, we have carefully considered the brief filed by his predecessor.

Facts found by the judge and by us are as follows: Henry Lawton Blanchard died on January 28, 1945, and his will was admitted to probate on March 26, 1945.   Under clause Fourth of his will he left certain real estate and 800 shares of common stock in E. I. du Pont de Nemours & Company, Inc., to five named trustees, to be held in trust for the

purpose of establishing a museum for the collection, care, and preservation of antiquities within the town of Avon. This clause gave the trustees power "to hold, manage, invest and reinvest" the trust property and the trustees were also given the power to accumulate income until they thought it advisable to go forward with the project. In addition the testator requested that the trustees named in the will choose their successors and he "desire[d] that the Trustees be paid a reasonable compensation for their services." The trustees were given the power to "establish such By-Laws and Rules for the governance of their conduct and the safety of the fund as they deem wise."

Two of the named trustees predeceased the testator and on nomination of the remaining trustees the court entered a decree in September, 1946, appointing successor trustees. The trustees in due course filed their inventory, which showed as the only asset of the trust 800 shares of du Pont stock, the value of which at that time being $166,800. The real estate mentioned in clause Fourth had been disposed of prior to the death of the testator.

None of the trustees named or appointed was either a lawyer, professional trustee or active in the investment field. On January 29, 1947, the trustees entered into an agency agreement with The Brockton National Bank[1] (bank) and under the terms of the agreement the bank was to act as custodian of the securities, advise the trustees as to investments, and handle the bookkeeping for the trust. In April of 1947, the trustees disposed of 700 shares of the du Pont stock and invested the proceeds in a diversified list of stocks and bonds.

In 1948, the trustees filed a petition in the Probate Court for leave to incorporate the trust. The court authorized the incorporation and the Henry Lawton Blanchard Fund, Inc. (corporation), was organized. The assets of the trust were transferred to the corporation and a new but similar agency agreement was entered into between the bank and the corporation.

---

[1] Now the National Bank of Plymouth County.

The trustees, in December of 1948, purchased real estate in Avon, which will be referred to hereinafter as the Dolan property, and rented it for a short period of time before removing the house on it.   In 1952, the trustees consulted an architect for the purpose of obtaining plans for a museum to be constructed on the Dolan property.   At that time the fund had a market value of about $180,000 and the trustees told the architect that it would be some time before the fund would be sufficient to commence construction of the museum.

From time to time during the period between 1945 and 1958, the trustees, through their counsel, discussed with the Attorney General the matter of the construction of the museum and whether or not the fund had reached a size where such construction would be feasible.   In April of 1957, the trustees agreed that the fund had reached a value that would warrant their going forward with plans for the construction of a museum and authorized their architect to prepare detailed plans and specifications in order that bids could be obtained.   At that time the fund had a market value in excess of $300,000.

During the period from April, 1957, until November, 1958, the architect presented no final plans to the trustees.   In November of 1958, Walter J. Packard, one of the trustees, offered to sell his house to the trustees for a price of $20,000 (hereinafter referred to as the Packard property).   The trustees had the property appraised and the appraiser placed a value of $28,000 on the property.   The trustees petitioned the court for approval of the purchase of the Packard property, and the Attorney General, who had been given a report of the appraiser, filed a statement in court that he did not care to be heard on the matter.   Subsequently the Attorney General withdrew his assent, and after hearing, the petition was denied.

In April, 1959, the Attorney General filed the present petition seeking the removal of the trustees and the appointment of new trustees.   Prior to the commencement of hearings on this petition, Walter J. Packard resigned as trustee

and the resignation was accepted by the judge on June 12, 1959. In response to a motion for specifications the Attorney General filed fourteen specifications. The judge found that these were proved, and made findings as to other matters not embraced in the specifications which, in his opinion, supported the decree removing the trustees.

We have considered the case in the light of our "obligation to review the evidence and reach a decision in accordance with our own reasoning and understanding, giving due weight to the findings of the trial judge, which we will not reverse unless they are plainly wrong, and finding for ourselves any additional facts we believe to be justified by the evidence." *Petition for Revocation of a Decree for Adoption of a Minor,* 345 Mass. 663, 669. We proceed to a discussion of the major grounds on which the decree is based.

The judge found that the trustees failed to file annual accounts as required by the terms of their bonds and failed to include the Dolan property in schedule C of their probate accounts. For the reasons presently appearing these findings do not justify removal. During the first three years of the trust the trustees failed to file accounts on an annual basis. But at the end of this period (1948) the trustees filed and had allowed three accounts covering the prior period.

It is true that G. L. c. 206, § 1, provides that the trustee "shall render an account . . . at least once a year" but the failure to render such an account constitutes a mere technical breach and does not warrant removal of the trustee unless he refuses or is unable to render an account when requested to do so by a proper party. See *Kinion* v. *Riley,* 310 Mass. 338, 341–342; Newhall, Settlement of Estates (4th ed.) §§ 273, 435.

The trustees also did not file accounts for certain years subsequent to the formation of the corporation in 1948. However, the trustees, having divested themselves of all the trust assets by the transfer of the assets, with court approval, to the corporation, had no property in their hands

as trustees under the will and it is difficult to see how they were obligated to account under the terms of their bonds. See *Walker* v. *Hall,* 1 Pick. 20; *Forbes* v. *McHugh,* 152 Mass. 412.

In *American Inst. of Architects* v. *Attorney Gen.* 332 Mass. 619, we were called upon to decide whether a foreign charitable corporation was required to secure a Probate Court appointment as trustee in this Commonwealth and to qualify as such by giving bond in order to receive from the executor of the will of a Massachusetts decedent a gift thereunder to the corporation. In holding that such an appointment was not necessary we quoted with approval the following language from *Brigham* v. *Peter Bent Brigham Hosp.* 134 Fed. 513, 517 (1st Cir.): "We should observe that the [charitable] corporation contemplated by the will was not to hold in trust, in the technical sense of the word, the property which it might receive. It was to hold it for its own purposes in the usual way in which charitable institutions hold their assets. Such a holding is sometimes called a quasi trust, and an institution like the one in question is subject to visitation by the state; but the holding does not constitute a true trust. On the transfer of the property devised . . . to a corporation as was anticipated, all technical trusts ceased." See Restatement 2d: Trusts, § 348 (f); Scott, Trusts (2d ed.) §§ 348.1, 385A.

In the case at bar the charitable corporation to which the assets of the trust were transferred was not expressly contemplated in the will creating the trust. But the setting up of the corporation resulted in tax advantages and the decision to do so was made upon the advice of counsel; the formation of the corporation and the transfer of assets was done with the approval of the court on a petition by the trustees to which the Attorney General was a party. The propriety of forming the corporation and transferring to it the assets of the trust has never been, and is not now, questioned; the carrying out of the trust through the corporation involved no departure from the purpose of the testator. See *Briggs* v. *Merchants Natl. Bank,* 323 Mass. 261, 278–279, and cases cited. Thus, it would seem that the

position of the corporation is not unlike that described in the above quoted language. The trustees have filed with the Attorney General from the year 1948 until the commencement of these proceedings annual reports showing the assets and operation of the charitable corporation as required by G. L. c. 12, § 8F. More than this was not required.

The judge found numerous irregularities in the agency agreement entered into between the trustees and the bank. He concluded, among other things, that the trustees improperly delegated their duties as trustees to the bank. We do not agree. None of the trustees had had much, if any, experience in the field of investments, and it was entirely proper for them to seek expert advice. The record reveals that the trustees were consulted on the investments made and gave their approval to such investments. Although the will provided that the trustees were to receive reasonable compensation for their services, they served without compensation. Thus, the fees paid to the bank under the agency agreement did not place any undue burden on the trust. *Boston* v. *Curley,* 276 Mass. 549, 562. While a trustee cannot surrender to another his duties with respect to investments, he may seek the advice of those better qualified. That is what was done here. *Milbank* v. *J. C. Littlefield, Inc.* 310 Mass. 55, 62. *New England Trust Co.* v. *Paine,* 317 Mass. 542, 556. Scott, Trusts (2d ed.) § 171.2.

The judge found that the seventh clause of the agency agreement which provided that ''All orders, directions, [and] approvals . . . shall be by the unanimous action of its [the corporation's] Directors'' was an ''improper abdication of the duties of the Trustees, and of the rights of the majority of the Trustees to act.'' The fact that the trustees chose to act by unanimous action in no way affects the rights and duties of its agent; the agent's power over investments was subject to the approval of the trustees and the agent's power is not enhanced by the unanimity provision.

The fact, of course, that the trustees chose to act by unanimous vote does not warrant their removal. ''In the

case of charitable trusts . . . [the] powers conferred upon the trustees can be exercised by the concurrence of a majority of them, unless it is otherwise provided by the terms of the trust. By the terms of the trust it may be provided, either expressly or by implication, that the powers or some of them shall be exercised only by the concurrent action of all of the trustees." Scott, Trusts (2d ed.) § 383. *Morville* v. *Fowle*, 144 Mass. 109, 113. *Boston* v. *Doyle*, 184 Mass. 373, 385. Restatement 2d: Trusts, § 383, comment b. The trustees, acting under the Blanchard will, which empowers them to "establish such By-Laws and Rules for the governance of their conduct and the safety of the fund as they deem wise," chose to act unanimously and it cannot be said that their decision to act in that manner was improper. There was, of course, no impropriety on the part of the trustees in delegating to the bank administrative details in the carrying out of the trust. See *Boston* v. *Curley*, 276 Mass. 549, 561.

The judge found that the sale of the 700 shares of du Pont stock "at a loss of $17,000 was an improper exercise of judgment, especially where the testator expressly authorized the Trustees to retain this stock." The language of the will gave the trustees the power "to hold, manage, invest and reinvest" the corpus of the trust. The judge evidently was impressed by the fact that if this stock had not been sold, the trust fund, due to later developments, would have been worth about $700,000 more. But the action of the trustees is not to be judged on the basis of hindsight. Their portfolio consisted of 800 shares of du Pont stock. The trustees were justified in diversifying their holdings as they did. See Scott, Trusts (2d ed.) § 228; *Dickinson, appellant*, 152 Mass. 184; *Davis, appellant*, 183 Mass. 499; *Warren* v. *Pazolt*, 203 Mass. 328, 346; *Boston* v. *Curley*, 276 Mass. 549, 561. That, as events turned out, they did not sell the stock at the most propitious time, does not justify their removal; otherwise there would be few, if any, who would undertake to act as trustees.

The judge found "that the Trustees have been inefficient in the management of the Trust and have allowed the Trust

Real-Estate to become unproductive and have failed to dispose of said real-estate or put it to use for purposes of said Trust.'' He also stated as grounds for removal that the trustees have neglected to execute the trust in that they hired an architect but have failed to do anything else toward the construction of the museum.

The Dolan property was purchased for $8,072.95 in 1948, in order to secure land as a site for the museum. At that time the fund was insufficient to warrant the construction of the museum, and, under the power to accumulate, the trustees decided to hold this property until there were sufficient funds. The cost involved of maintaining this property has been slight. The judge during the hearing described this property as follows: ''It is a fine location. . . . I think . . . [the trustees] had a good choice there, and there was sound judgment.'' Nothing in the judge's findings suggests that his earlier description was inaccurate. There is no evidence to support a finding that the trustees acted improperly when they acquired and held the Dolan property.

Nor was the judge justified in removing the trustees on the ground that there was undue delay in the construction of the museum. The trustees were authorized under the will to accumulate the funds ''to any extent they think wise before going forward with this undertaking.'' In 1952, the trustees consulted an architect for the purpose of obtaining plans for the museum on the Dolan property when the fund had a value of about $180,000. In 1953, the Attorney General advised the trustees that in his opinion the fund was not then large enough to warrant going forward with the construction of the museum. In 1957, the Attorney General informed the trustees that they should use their discretion as to the proper time for commencement of the construction. Shortly thereafter, the trustees voted to obtain final plans for the museum and entered into a contract with the architect authorizing him to prepare such plans.

There was, to be sure, some delay in the commencement of construction but the delay cannot be attributed solely to the trustees. To a very considerable extent the delay was

caused by the architect.   The trustees also were consider-
ing another plan which involved the purchase of the Pack-
ard property.   The petition for leave to purchase this
property was filed in November of 1958, and was under con-
sideration by the Attorney General's office until April, 1959.
In April, 1959, the present proceeding seeking removal of
the trustees was commenced, and thereafter everything
relating to the construction of the museum was held in
abeyance.

Under the will the testator left the timing of the construc-
tion of the museum to the discretion of the trustees.   This
discretion is not an empty one and, if not unreasonably
exercised, is not subject to revision by the court.   *Hawes
Place Congregational Soc.* v. *Trustees of the Hawes Fund,*
5 Cush. 454, 457–458.   *Holmes* v. *Welch,* 314 Mass. 106, 112.
We perceive no grounds here that would justify judicial
revision of the trustees' conduct.

The trustees petitioned the court for approval to pur-
chase the property of Walter J. Packard, one of the trus-
tees.   The judge found that the trustees acted with bad
faith in relation to this proposed transaction by (1) fail-
ing to notify either the court or the Attorney General that
the trustees already owned land which they had purchased
for the purpose of erecting a museum thereon; and (2) act-
ing in collusion with one of the trustees in agreeing to pur-
chase the property for more than its value and rendering
the real estate previously purchased by them useless to the
trust and rendering the plans for the museum which they
purchased for $700 also useless.

There was testimony of the trustees' counsel, which was
not contradicted, that the facts relating to the Dolan prop-
erty were fully disclosed to the Attorney General prior to
the hearing.   At the hearing on the trustees' petition re-
lating to the Packard property the relevant facts as to the
ownership of the Dolan property were presented to the
court before the entry of the decree disallowing the pur-
chase.   The mere fact that the trustees failed to include
certain information in their petition does not support a

finding of bad faith when at the hearing on the petition all the relevant facts, as here, were brought to the attention of the court.

It is, of course, elementary law that a "trustee, unless authorized by the trust instrument or by a decree of a court, or unless he has the consent of all the beneficiaries, if they are of age and competent to decide and are fully informed of all the details of the transaction, which in fact must be fair and reasonable, cannot act in a dual capacity as a seller of trust property to himself or as a purchaser for the trust of his own property." *Boston Safe Deposit & Trust Co.* v. *Lewis,* 317 Mass. 137 at 140. See G. L. c. 202, § 14. The trustees did not violate this principle.

The trustees consulted an independent appraiser who valued the Packard property in excess of the price offered by its owner, and the Packard offer was found reasonable by one of the appraisers called as a witness by the Attorney General. The trustees could have reasonably believed that the transaction was not for the personal benefit of one of them and was for the benefit of the trust. Evidence of their good faith is shown by the fact that they petitioned the court for approval of the purchase. *Boston Safe Deposit & Trust Co.* v. *Lewis, supra.* When before the court on their petition the trustees made a full disclosure of all the relevant facts. That the petition was opposed by the Attorney General and denied by the court does not indicate that the trustees acted improperly in proposing the purchase. They had a right to submit the matter to the court despite the objection of the Attorney General. See *Brookline* v. *Barnes,* 327 Mass. 201, 207–208.

Moreover, no damage has resulted from the denial of the petition concerning the Packard property; the trustees are free to revert to the original plan or to adopt some other suitable arrangement.

Other findings of the judge not discussed in this opinion do not require discussion. After a careful review of all the evidence we are of the opinion that the conduct of the trustees was not such as to call for their removal. The decree

of the Probate Court is reversed, and a new decree is to be entered dismissing the petition. The trustees are entitled to charge the trust fund for the reasonable costs and expenses of this litigation, including reasonable counsel fees. G. L. c. 206, § 16. *Gordon* v. *Guernsey,* 316 Mass. 106, 110, and cases cited.

*So ordered.*