GRETCHEN T. GORMAN *vs.* PAUL ROBERT STEIN & others.

Middlesex.　　February 13, 1973. — April 25, 1973.

Present: HALE, C.J., GOODMAN, & GRANT, JJ.

*Trust,* Removal of trustee, Care of property, Trustee's discretion, Payments to beneficiary, Accounting by trustee, Investments. *Equity Jurisdiction,* Rescission.

Removal of the trustees of an irrevocable trust established by the settlor for the benefit of herself for life and thereafter for her children and grandchildren, and providing for payments of income and principal

---

to the settlor in the "absolute and uncontrolled discretion" of the trustees, would not have been justified by storage by the trustees, allegedly without consulting the settlor, of valuable paintings transferred to the trust by the settlor [248-249]; by the trustees' denial of some of the settlor's requests for additional payments [249-251]; by the trustees' failure, "through misunderstanding or inadvertence," to furnish the settlor with copies of the trust's financial statements [251]; or by alleged "hostility" between the settlor and the trustees, one of whom was a remainderman and another of whom was the husband of another remainderman [253].

Where it appeared in a suit in equity that at the time of the death of a testator he held certain real estate in joint tenancy with his wife, the plaintiff, with a right of survivorship, that by his will he attempted to devise his interest in the property to the plaintiff for life, with remainder to their children, that the plaintiff gave the property to her second husband, that subsequently it was acquired by an irrevocable trust established by the plaintiff for the benefit of herself and her children and of which her second husband was not a beneficiary, through transactions with him by the trustees and the children not involving the plaintiff, and that the trust acquired the property as an investment, it was held that the plaintiff was not entitled to have the transactions rescinded and the property reconveyed to her and her second husband. [251-253]

BILL IN EQUITY filed in the Superior Court on December 15, 1970.

The suit was heard by *Kalus, J.*

*Laurence M. Johnson* (*Michael J. Liston* with him) for the plaintiff.

*Frank L. Kozol* (*David Brady* of New York & *Joel A. Kozol* with him) for the defendants.

HALE, C.J.  This suit in equity has been brought by Gretchen T. Gorman, the settlor and lifetime beneficiary under a "Trust Providing for Discretionary Distributions" (discretionary payments trust), dated July 7, 1966, against Paul R. Stein, Torsten Norvig, and Henry B. Thielbar, the trustees under this trust,[1] and the living children and grandchildren of the plaintiff who are contingent benefi-

---

[1] Paul R. Stein is the son of the plaintiff. Torsten Norvig is the plaintiff's son-in-law. Henry B. Thielbar is an investment counsellor and acted as such for the plaintiff and also for her late husband.

ciaries.[2] The plaintiff seeks to have the trustees removed as trustees of this trust and to have the conveyance of certain Vermont real estate to the trustees rescinded and the property reconveyed to her and her husband. A final decree dismissing the bill was entered in the Superior Court, and the plaintiff appealed to the Supreme Judicial Court. After the case was entered in that court, it was transferred to this court under the provisions of G. L. c. 211A, § 12. The case is before us on a report of all the evidence and a report of material facts. In deciding this case we have the duty to examine all of the evidence and to exercise our own judgment, accepting as true the findings of the judge based on oral testimony unless they are shown to be plainly wrong. *Massachusetts Mut. Life Ins. Co.* v. *Massachusetts Life Ins. Co.* 356 Mass. 287, 288.

The plaintiff, now aged seventy-five, was married to Edwin Stein for thirty-seven years prior to his death in 1959. They had four children — Paul R. Stein (a defendant-trustee), Gerda S. Norvig (wife of one of the defendant-trustees), Edwin Stein, Jr., and Barbara S. Tinker. The plaintiff had inherited substantial assets from her parents, and at the time of her husband's death these assets had increased in value to approximately $2,000,000. Her husband's separate estate was of about the same size. By his will Edwin Stein, with his wife's agreement, left substantially all of his estate to his four children in equal shares.

The plaintiff married Dr. Warren F. Gorman on October 19, 1962. In 1963 the plaintiff created a trust, the trustees of which were the defendant trustees in this case. That trust provided, among other things, for the payment of the net income of the trust to the plaintiff during her lifetime, empowered the trustees to pay all or part of the principal to the plaintiff at any time and for any reason, including the termination of the trust, and provided for the disposition of the remainder under a power of appointment. The plaintiff was receiving about $4,000 a month from the

---

[2] Paul R. Stein, Barbara Stein Tinker, Gerda Stein Norvig, Edwin Stein, Jr., Geoffrey Stein, Stephanie Stein, Kristen Stein, David Tinker, Wendy Tinker, Gena Tinker, Peter Norvig, Marc Norvig, and Laura Norvig.

trustees under that trust. In late 1965 and early 1966, the plaintiff approached the trustees with respect to changing the trust. By changing the trust the plaintiff hoped, while keeping the same management, to provide (1) more uniform and larger payments to herself (2) an independent life income for her husband, and (3) efficient distribution of her assets to her children after her death. Thereafter a number of conferences and communications took place between the lawyers for the trust and plaintiff. The plaintiff's husband and the trustees participated in some of these. Drafts of new trusts were prepared by the trustees' attorneys and were examined by the plaintiff's attorney, who made suggestions as to changes, some of which were incorporated in the final drafts.

The 1963 trust was terminated on July 7, 1966. The assets of that trust were transferred in approximately equal amounts to the trustees under two new trusts, both irrevocable, which the plaintiff then established. Under the first trust (Trust Providing for a Stipulated Income to Dr. and Mrs. Gorman) the plaintiff was to receive $72,000 annually for her lifetime and Dr. Gorman was to receive $15,000 for his. Both of these annual sums were to be substantially free of income taxes. The first trust is not directly involved in this litigation. The second, or discretionary payments trust, is the subject of this case. This trust provides for payments of income and principal to the plaintiff in the "absolute and uncontrolled discretion" of the trustees.[3] The trust provides for payments to the children of the grantor after her death, with further provisions for the

---

[3] "A. During the life of the grantor, the trustees shall accumulate the net income of the trust as received, and at the end of each calendar year shall add such accumulated net income to the principal of the trust, to be administered as part of the principal. B. Notwithstanding the provisions of Section A of this Article First, the trustees shall have the power, at any time or times, during any calendar year, in the life of the grantor, prior to the addition of that year's net income to the principal, to pay to, or apply for the benefit of, the grantor, such part, parts or all of such net income as the trustees shall determine, in their absolute and uncontrolled discretion. C. Anything to the contrary notwithstanding, the trustees shall have the power, at any time or times, in the life of the grantor, to pay to, or apply for the benefit of, the grantor, such part, parts or all of the principal of the trust as the trustees shall determine, in their absolute and uncontrolled discretion, for any reason whatsoever, including the termination of the trust."

deceased children of the plaintiff. The trustees were given broad powers under the terms of the trust as to investments, including the right to acquire and hold real property or any interest therein. The Vermont property and a New York apartment were not conveyed to either of these trusts *by the settlor*.

The relevant legal and equitable principles are not in dispute. Power is lodged in a court of general equity jurisdiction to remove trustees under appropriate circumstances. *Cooney* v. *Montana,* 347 Mass. 29, 38. The duty which devolves on the trustee requires that he manage the funds entrusted to his care "with reasonable skill, prudence, and judgment." *Rugo* v. *Rugo,* 325 Mass. 612, 617. Grounds for removal include cases where the trustee becomes identified with the adverse interests of a beneficiary, *Scott* v. *Rand,* 118 Mass. 215, 218; where hostility between the trustee and beneficiary precludes the exercise of prudence and judgment in the management of the trust, *Cooney* v. *Montana,* 347 Mass. 29, 38; where the trustee arbitrarily refuses to make payments in his discretion, Scott, Trusts (3d ed.) § 187.3; and where the trustee unjustifiably refuses to render an account. See *Kinion* v. *Riley,* 310 Mass. 338, 341-342.

The judge made specific and comprehensive findings in this case. While much of the evidence is documentary, its signficance can only be appreciated when viewed in connection with the oral testimony. A judge who has seen and heard the witnesses is in a much better position to determine their credibility than we are from a printed record. *Barnum* v. *Fay,* 320 Mass. 177, 180.

The factual situations which form the bases of the plaintiff's claim for relief are treated separately below.


COLLECTION OF PAINTINGS.


Certain valuable paintings which had been held by the trustees under the 1963 trust were also held by the trustees in the discretionary payments trust. The plaintiff had

retained physical custody of these paintings and had loaned them to the University of Arizona for display.[4] The trustees had unsuccessfully sought to obtain recognition of the trustees' title to these paintings from the university as well as guaranties that the paintings would be properly insured. Thereafter, by direction of the trustees, the paintings were returned to New York and have since been in storage there. The plaintiff contends that the trustees have failed to inform her as to the disposition of the paintings and have not consulted her with respect to the storage, use, or exhibition of the collection, in breach of their fiduciary duties. The judge found that "[t]he trustees demanded return of said paintings (presently in storage) only after their repeated requests for confirmation of ownership in the name of the trustees were ignored by . . . [plaintiff] and her husband, the latter exercising dominion inconsistent with the terms of the trust." In transferring these paintings to the trust, the plaintiff reposed discretion in the trustees with regard to their safekeeping. We cannot say that the trustees' actions were inconsistent with the faithful and efficient administration of the trust. See *Shirk* v. *Walker,* 298 Mass. 251, 259. In these circumstances this court will not substitute its judgment for that of the trustees. See *Dumaine* v. *Dumaine,* 301 Mass. 214, 222.


REQUESTS FOR ADDITIONAL PAYMENTS.


At various times since the creation of the 1966 trusts, the plaintiff has requested payments which would be in addition to the payments to which she was entitled under the other 1966 trust. The plaintiff requested these payments to defray expenses occasioned by the litigation brought against her and her husband by her children with respect to the Vermont property, which litigation is discussed more fully below; to pay $8,000 for ballroom dancing lessons; to

---

[4] The plaintiff and her husband were then residing in Arizona.

compensate for the increased cost of living since 1966; and to permit her to make certain charitable contributions. With the exception of $5,000 paid to Barnard College, the plaintiff's alma mater, the trustees did not approve these requests. The plaintiff contends that the trustees failed to use their judgment reasonably but instead arbitrarily declined to honor her requests. The plaintiff argues that the interests of two of the trustees are in conflict with hers since one is a beneficiary and the other is the husband of a beneficiary.[5] The judge found that the plaintiff's "purposes in creating the subject trusts were to conserve and protect her assets, provide for her support, welfare and security during her lifetime, and to facilitate distribution of her remaining assets to her children and grandchildren after her death." The judge also found that the trustees "at all times acted in good faith, with sound judgment and in a reasonable manner to effectuate such purposes; they have at all times acted in a manner consistent with the best interests and welfare of the . . . [plaintiff]. They have in no way been niggardly or parsimonious in their distributions to . . . [plaintiff] and her husband. They have carefully considered each request for additional distributions and exercised sound discretion in either granting or denying such request." The plaintiff herself testified that she recognized the trustees as men of integrity and good faith. The judge further found that the trustees refused the request for $8,000 to pay for dancing lessons because in 1961 the trustees had paid the plaintiff $11,000 for a "lifetime course" in dancing lessons with the same studio. The judge further found that "[t]he . . . [plaintiff] and her husband had received about $112,000 in May, 1968 from the sale of the Vermont real estate and about $90,000 at some time previous from the sale of . . . [plaintiff's] New York City co-operative apartment" and that the ". . . [plaintiff] and her husband had fewer expenses after the sale of the above-mentioned properties." The trustees were under an obliga-

---

[5] These relationships existed at the time of the creation of the trust.

tion to give serious and responsible consideration to the propriety of the plaintiff's requests, keeping in mind the broad purposes and the financial condition of the trust. See *Holyoke Natl. Bank* v. *Wilson,* 350 Mass. 223, 227. In deciding on the requests for additional payments, the trustees could also take into account the plaintiff's financial condition. See *Lumbert* v. *Fisher,* 245 Mass. 190. We are not presented with circumstances where the trustees are authorized in their judgment to make certain payments and, instead of exercising any judgment in the matter, arbitrarily decline to make any payments. Scott, Trusts (3d ed.) § 187.3.

### Failure to Provide Financial Information.

On several occasions the plaintiff requested a copy of the trusts' financial statements. Although accountants for the trustees prepared such statements annually, no reports were received by the plaintiff until about the time this litigation was instituted. The judge found that it was "only through misunderstanding or inadvertence that the ... [plaintiff] did not receive a copy." Whether this inadvertence was the result of human fallibility is not important since it did not arise from the degree of "incapacity or negligence which might indicate future peril to the trust property." *Shirk* v. *Walker,* 298 Mass. 251, 259. See *Attorney General* v. *Olson,* 346 Mass. 190, 195. There is no suggestion that there was anything improper in the statements that were prepared. We are persuaded that a repetition of such inadvertence is unlikely.

### The Vermont Property.

Edwin Stein by his will attempted to devise his interest in a summer estate in Vermont to the plaintiff for her lifetime, with the remainder to their four children. At the time of his death, title to this property was held in joint tenancy with the plaintiff with a right of survivorship. The

plaintiff gave the property to Dr. Gorman, and he subsequently sold a parcel out of it for which he received $58,000. In September of 1966 the plaintiff's children (except Paul R. Stein) commenced litigation in a New York court against Dr. Gorman and the plaintiff by which they sought to establish their own rights in this property in accordance with the intent of their father as expressed during his lifetime and by his will. No affirmative relief was sought against the plaintiff or any interests she might have had in the property. In that litigation the three children were represented by the same New York law firm which, at all times since the creation of the 1963 trust, had represented the trustees. There is nothing in the record before us which would suggest that the trustees had anything to do with the institution of that suit. The litigation was settled, and pursuant to that settlement Dr. Gorman conveyed the fee in the property to the children, who in turn conveyed the property to the trustees. The trustees paid the purchase price of $112,000 from the principal of the discretionary payments trust. Dr. Gorman received that money.

The plaintiff advances a number of contentions concerning the propriety of the trustees' conduct in connection with the acquisition of the Vermont property which we need not summarize as in our view these contentions are immaterial. All of the dealings, whether of the trustees or the children, with respect to this property were with Dr. Gorman and not with the plaintiff.[6] We consider the transaction, as did the plaintiff, to be a conveyance by Dr. Gorman through the children to the trust and the acquisition of the property by the trustees as an investment. Dr. Gorman was not a beneficiary of the discretionary payments trust. The trustees owed no fiduciary duty to him. The plaintiff does not claim that the trustees paid more for the property than it was worth or that the investment was an improper one.

---

[6] Indeed, the plaintiff herself testified, "I had given the property to my husband, and he owned it so that when it was sold, the money was his."

For the foregoing reasons, the rescission of the Vermont transaction sought by the plaintiff must fail. The plaintiff relies on cases which are inapposite. In each the court sought to protect the beneficiary from actions of the trustees in their private capacities. In the present case the trustees' purchase was on behalf of the trust and not themselves. Cf. *Vinal* v. *Gove,* 275 Mass. 235, 241. The acquisition of this property was within the powers of investment granted the trustees under the trust agreement.

## ALLEGED HOSTILITY.

The plaintiff argues that in the light of all the circumstances there is such hostility between the trustees and herself that their removal is required. The judge found "that there was no 'hostility' between the ... [plaintiff] and the trustees so as to require their removal." We cannot pronounce that finding plainly wrong.

*Decree affirmed.*