USCA1 Opinion

 

 September 4, 1992 [NOT FOR PUBLICATION] UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ___________________ No. 92-1168 C.D. DI GIAMBATTISA, Plaintiff, Appellant, v. SHEILA E. MCGOVERN, ET AL., Defendants, Appellees. __________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. A. David Mazzone, U.S. District Judge] ___________________ ___________________ Before Breyer, Chief Judge, ___________ Campbell, Senior Circuit Judge, ____________________ and Cyr, Circuit Judge. _____________ ___________________ C.D. Di Giambattisa on brief pro se. ___________________ Scott Harshbarger, Attorney General and Michelle A. ___________________ ____________ Kaczynski, Assistant Attorney General, on brief for appellees. _________ __________________ __________________ Per Curiam. This appeal has its origin in a matter ___________ litigated several years ago in the Middlesex Probate Court in Massachusetts. The appellant, C.D. Di Giambattista, was the trustee of a revocable trust established under the laws of Massachusetts. The amended complaint contains only a sparse description of the state court proceedings, but it appears that the beneficiaries of the trust, all Mr. Di Giambattista's siblings, sued in the Probate Court to remove Mr. Di Giambattista as trustee and as executor of the settlor's estate. The proceedings were rancorous, and at one time or another involved four judges of the Probate Court: appellees McGovern, Sullivan, Leahy and Highgas. The beneficiaries were represented by Richard Liebman, who is also an appellee here. In 1986 the Probate Court removed Mr. Di Giambattista as trustee and executor. The Massachusetts Appeals Court affirmed the judgment in June 1991. By then, Mr. Di Giambattista had already filed this lawsuit in the United States District Court for the District of Massachusetts. He named Judges McGovern, Sullivan, Leahy and Highgas, and attorney Liebman, as defendants, and claimed that they had violated the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. 1961 et seq., by conducting the affairs of the Middlesex Probate Court through a "pattern of -2- racketeering activity." At length, the district court dismissed the complaint. This appeal followed. We affirm. The Judicial Defendants _______________________ The district court dismissed the claims against Judges McGovern, Sullivan, Leahy and Highgas because each enjoyed absolute judicial immunity for the acts he or she is alleged to have committed. The doctrine of judicial immunity protects judges from "civil liability for any normal and routine judicial act." Cok v. Cosentino, 876 F.2d 1, 2 (1st ___ _________ Cir. 1989) (per curiam) (citing Stump v. Sparkman, 435 U.S. _____ ________ 349, 356-57 (1978)). "Only judicial actions taken in the clear absence of all jurisdiction will deprive a judge of absolute immunity." Id. (citing Stump, 435 U.S. at 357). ___ _____ Mr. Di Giambattista's principal contention on appeal is that Congress, in enacting the RICO statute, abrogated the traditional rule of judicial immunity. He supports his argument by citing cases in which courts have said that judges may be held criminally liable for violating RICO. See, e.g., United States v. Forsythe, 560 F.2d 1127 (3d Cir. __________ _____________ ________ 1977); United States v. Vignola, 464 F.Supp. 1091 (E.D.Pa. ______________ _______ 1979). Federal courts "have proceeded on the assumption that common-law principles of legislative and judicial immunity were incorporated into our judicial system and that they should not be abrogated absent clear legislative intent to do -3- so." Pulliam v. Allen, 466 U.S. 522, 529 (1984). Under the _______ _____ common law, judges are generally immune from civil liability for judicial acts, subject to the conditions described above, but they do not enjoy immunity from criminal liability. See ___ O'Shea v. Littleton, 414 U.S. 488, 503 (1974). Thus, the ______ _________ fact that judges have been held criminally liable for __________ violating RICO in no way suggests that Congress intended to give civil RICO plaintiffs a remedy not available to those _____ who sue judges under the common law. And, as we see no other indication of Congressional intent, we decline to deprive these judges of the immunity to which they are generally entitled by settled legal principles. Mr. Di Giambattista also contends that the judges here should not be protected by immunity because they acted in "the clear absence of all jurisdiction." The "scope of . . . jurisdiction must be construed broadly where the issue is the immunity of the judge," Stump v. Sparkman, 435 U.S. at 356, _____ ________ and a judge will doff the cloak of immunity only when he conducts proceedings over which he lacks any semblance of subject-matter jurisdiction. Thus, in a classic example offered by the Supreme Court 120 years ago, "if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for [criminal] offenses, jurisdiction over the subject of offenses being entirely wanting in the court, and -4- this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority." Bradley v. Fisher, 80 U.S. 335, 352 _______ ______ (1872). On the other hand, if a judge in a criminal court ________ convicts a defendant of even a non-existent crime, he maintains his immunity, because "where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case . . . ." Id. ___ None of the acts identified by Mr. Di Giambattista was actionably extra-jurisdictional according to this standard. Massachusetts probate courts have general equity jurisdiction, M.G.L. c. 215 6, and the removal of a trustee or executor is an exercise of such equity jurisdiction. See, ____ e.g., Gorman v. Stein, 1 Mass. App. Ct. 244 (1973). Thus, ____ ______ _____ Judge Sullivan's rulings during the trial, whether or not correct, fell within his purview as a probate judge, and even Judge Highgas, though not the trial judge, did not act in the "clear absence of all jurisdiction" by hearing motions and issuing orders that affected the case, since "jurisdiction over the subject-matter [was] invested by law . . . in the court which he [held]." Bradley v. Fisher, 80 U.S. at 352. _______ ______ -5- Nor were the orders issued by Judge Sullivan and Judge Leahy after the entry of final judgment clearly beyond the judges' jurisdiction. Although, as Mr. Di Giambattista contends, the taking of an appeal after entry of final judgment may "oust" the trial court of jurisdiction under most circumstances, probate judges retain power to make post- judgment rulings in equity cases because Massachusetts law expressly provides that an appeal of an probate court's equity decision "shall not suspend or stay proceedings under such order or decree pending the appeal." M.G.L. c. 215, 23. Similarly, Judge McGovern's order that Mr. Di Giambattista produce additional trial transcripts before proceeding with his appeal was not clearly beyond the bounds of her jurisdiction as fixed by Massachusetts law. Probate appeals are governed by the Massachusetts Rules of Appellate Procedure. M.G.L. c. 215, 10. Mass. R. App. P. 8(b) gives probate judges authority to require appellants to order additional portions of the transcript in appropriate cases, and this means that Judge McGovern, whether she acted rightly or wrongly, did not act in the "clear absence of all jurisdiction." In sum, because the amended complaint failed to allege any actionable conduct committed outside the defendants' jurisdiction as probate judges, we conclude that the district -6- court correctly dismissed the claims against appellees McGovern, Sullivan, Leahy and Highgas. Attorney Liebman ________________ Attorney Liebman was not protected by judicial immunity, and the absence of a discussion of the viability of the claims against him in the district court's opinion led Mr. Di Giambattista to argue that "Liebman gets a free ride on judicial immunity." However, notwithstanding the district court's failure to justify independently its dismissal of the RICO claims against Liebman, we find it appropriate to affirm. A court of appeals "can affirm on any ground presented by the record," Acha v. United States, 910 F.2d 28, ____ _____________ 30 (1st Cir. 1990), and our examination of the amended complaint convinces us that Mr. Di Giambattista failed to state a claim against Liebman upon which relief could have been granted. In order to make out a civil RICO claim, a plaintiff must plead and prove that the defendant committed, or agreed to commit, a "pattern of racketeering activity." 18 U.S.C. 1962(a), (b), (c) and (d). "Racketeering activity" is defined precisely in 18 U.S.C. 1961(1) to mean (A) any act involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter or dealing in controlled substances that is a felony under state law, and (B) any one of several enumerated federal crimes. Mr. Di -7- Giambattista says that Liebman committed predicate racketeering acts of fraud, bribery, extortion and obstruction of justice, but the facts alleged in his amended complaint fail to bear out these conclusory charges. Fraud - Mr. Di Giambattista alleged that Liebman _____ committed four predicate acts of "fraud." However, while mail fraud, 18 U.S.C. 1341, and wire fraud, 18 U.S.C. 1343, constitute "racketeering activity," common-law fraud does not. Fleet Credit Corp. v. Sion, 893 F.2d 441, 445 (1st __________________ ____ Cir. 1990).1 Only one of the four fraud allegations contained any reference to the mails: it charged that Liebman had interfered with the delivery of the mail by causing a __________ postal employee to intercept a summons sent by Mr. Di Giambattista, not that Liebman had used the mail in ____ furtherance of a scheme to defraud. In statutory terms, Mr. Di Giambattista has accused Liebman not of mail fraud in violation of 18 U.S.C. 1341, but of obstructing the mail in violation of 18 U.S.C. 1701 -- a federal crime, to be sure, but not "racketeering activity." Bribery - the three paragraphs in the amended complaint _______ alleging bribery concerned statements that Liebman made in ____________________ 1. For this reason, Mr. Di Giambattista failed to charge Judge Sullivan with committing a predicate crime when he alleged that the judge had made a false declaration to a federal district court in response to a civil rights complaint that Mr. Di Giambattista had brought against him, but failed to allege that the judge had accomplished this "fraud" through use of the wires or mails. -8- court to Judges Leahy and McGovern. None contained any suggestion that Liebman gave, offered, or promised either judge anything of value. All therefore failed to allege an essential element of the crime of bribery as it is defined by both state law, M.G.L. c. 268, 2(a) and 3(a), and federal law, 18 U.S.C. 201(b). Extortion - Mr. Di Giambattista identifies five _________ paragraphs of his complaint as containing allegations of extortion, but without exception these paragraphs recounted demands which Liebman made during litigation. A threat to sue, even if groundless and made in bad faith, may be tortious under state law, but it is not extortion under federal law, see I.S. Joseph Co. v. J. Lauritzen A/S, 751 ___ ________________ _________________ F.2d 265 (8th Cir. 1984), and we think the same distinction should be made with respect to demands made in the course of, or threats to continue or intensify, ongoing litigation. Obstruction of Justice - Finally, the RICO statute ________________________ identifies five "obstruction of justice" offenses as predicate crimes: 18 U.S.C. 1503 (influencing officers or jurors of United States courts); 18 U.S.C. 1510 (obstructing investigations of federal crimes); 18 U.S.C. 1511 (obstructing enforcement of state law with intent to facilitate an illegal gambling business); 18 U.S.C. 1512 (tampering with a witness, victim or informant); and 18 U.S.C. 1513 (retaliating against a witness, victim or -9- informant). None of the several instances of "obstruction" alleged by Mr. Di Giambattista fit the definition of any of those crimes.2 Having surveyed the amended complaint, and finding that it failed to allege that Liebman committed, or agreed to commit, even a single predicate racketeering act, we conclude ______ that the district court properly dismissed the RICO claims against Liebman as well. Affirmed. ________ ____________________ 2. Mr. Di Giambattista also alleged that Liebman committed twenty-one predicate acts of "conspiracy." Conspiracy, in and of itself, is not racketeering activity, although a conspiracy to commit a "pattern of racketeering activity" is a violation of the RICO statute. 18 U.S.C. 1962(d). We assume that Mr. Di Giambattista meant to say in the conspiracy allegations that Liebman had agreed to commit, or perhaps aided and abetted the commission of, predicate acts undertaken by others. But with few exceptions, the acts "conspired to" were orders issued by the probate judges, none of which, in our opinion, even remotely resembles "racketeering activity" as the RICO statute defines that term. -10-