United States Court of Appeals,

Eleventh Circuit.

No. 95-8396.

Frederick D. LEDBETTER, Plaintiff-Appellant,

v.

FIRST STATE BANK & TRUST COMPANY, Trustee, Defendant-Appellee.

June 25, 1996.

Appeal from the United States District Court for the Middle District of Georgia. (No. 93-124-1-ALB-AMER) Duross Fitzpatrick, Chief Judge.

Before BIRCH, Circuit Judge, GODBOLD, Senior Circuit Judge, and O'KELLEY[*], District Judge.

GODBOLD, Senior Circuit Judge:

Frederick D. Ledbetter is the beneficiary of a written, revocable trust, of which he is also the trustor, and First State Bank and Trust Company is the trustee. The bank, located in Georgia, is a wholly owned subsidiary of First State Corporation ("FSC"), a two-bank holding company. The bank, as trustee for plaintiff, owns less than 1/2% of 1% of the outstanding stock of FSC. Considering other trusts for a number of plaintiff's relatives, the bank owns nearly 40% of the holding company's outstanding stock, although it has the power to vote only 6% to 8%.

Plaintiff sued the bank, alleging that as trustee for him it had numerous conflicts of interest and that in several respects it violated duties owed to him as trust beneficiary by acting or failing to act in his interest.

The district court found that the bank had conflicting

[*]Honorable William C. O'Kelley, U.S. District Judge for the Northern District of Georgia, sitting by designation.

interests.  Nevertheless it granted summary judgment to the bank. We reverse.

## I. Plaintiff's claims

Plaintiff makes four major claims:

(1) That the bank as trustee failed to "encourage, prompt, and if necessary join with other shareholders" of FSC to require FSC to engage in discussions with a bank holding company interested in merging with or purchasing FSC.  The management of the defendant bank and of FSC—principal officers and directors—is substantially common.  FSC has maintained an anti-merger policy directed at keeping FSC and its two subsidiary banks independent. Representatives of First Alabama Bancshares, Inc., a bank holding company,[1] met with Morgan Murphy and Douglas Wren, who are the senior officers of FSC and the bank, and explored the possible advantages of a merger or sale between FSC and First Alabama. First Alabama was told that FSC was not interested.  Subsequently First Alabama confirmed in a letter to Murphy its interest in a merger and what First Alabama saw as the benefits of a merger.  No formal offer was made by First Alabama.

Plaintiff contended in the district court that the substantial minority of FSC stock held by the bank in various trusts for members of his family, including plaintiff, gave the bank as trustee power to influence the actions of FSC for the benefit of trust beneficiaries, and that negotiations with First Alabama would have led to benefits to plaintiff and other trust beneficiaries. According to plaintiff, the possibilities of sale or merger of FSC

---

[1]Now affiliated with Regions Bank.

were not communicated to, or not fully communicated to, or were falsely communicated to, the bank and its trust committee. The trust committee was never consulted or informed of the First Alabama approach and never considered it. Additionally, though the bank's principal officers and directors knew of the First Alabama approach and FSC's rejection, they took no action to have the bank as trustee consider the matter on behalf of the beneficiaries whose trusts held FSC stock.

(2) Pursuant to authority of its management, which was essentially common with that of the bank, FSC made a public offering of its treasury stock, the effect of which, plaintiff contends, was to dilute the value of FSC's stock held in plaintiff's trust and to diminish the voting power of the bank as trustee of plaintiff's trust. Plaintiff asserts that FSC's offering of its treasury stock was motivated by a desire to dilute the interests of trust beneficiaries (and other holders of FSC stock) and thereby strengthen FSC's anti-merger strategy, and that the bank as trustee acted disloyally because it made no effort to stop the FSC offering.

(3) After plaintiff filed this suit the bank immediately transferred to plaintiff all FSC stock held by it in his trust but continued to hold other assets in his trust. Shortly thereafter it resigned as trustee. Plaintiff contends that these acts by the trustee were taken without regard to his interests as beneficiary and that the resignation was intended to deprive him of standing to pursue this suit.

(4) Payments made to the bank's principal officers by FSC

violated Georgia law.

We hold that summary judgment was improperly granted on all four claims.

## II. Breach of the duty of undivided loyalty

The foremost duty which a fiduciary owes to its beneficiary is undivided loyalty. *Clark v. Clark,* 167 Ga. 1, 144 S.E. 787 (1928); *Fulton Nat'l Bank v. Tate,* 363 F.2d 562 (5th Cir.1966). *Accord, Comptroller's Handbook for National Trust Examiners,* July 1984, p. 1.[2] If trustee places itself in a position where its interests *might* conflict with the interests of the beneficiary, the law presumes that the trustee acted disloyally; inquiry into such matters as whether the transaction was fair is foreclosed and the burden shifts to the trustee to show it received no benefit. It is not necessary for the beneficiary to show that the fiduciary acted in bad faith, gained advantage, fair or unfair, or that the beneficiary was harmed. *Fulton Nat'l Bank,* 363 F.2d at 571-72. The defendant bank's policy manual acknowledges that the bank owes a duty of undivided loyalty to the beneficiaries of the trusts that it manages. In *Clark v. Clark* the Supreme Court of Georgia discussed the duty of undivided loyalty.

> As long as the confidential relation lasts, the trustee owes an undivided duty to the beneficiary under the trust, and cannot place himself in a position which would subject himself to conflicting duties, or expose him to the temptation of acting contrary to the best interests of the cestui que trustent. 3 Pomeroy's Equity Jurisprudence, § 1077. Beneficiaries of a trust are entitled to have it administered by trustees entirely at the service of the trust and above suspicion. *Crummey v. Murray,* 130 Misc.Rep. 378, 224 N.Y.S.

---

[2]Defendant is not a national bank. The Comptroller's Handbook is, however, a reliable authority in the banking industry.

49 [ (1927) ]. The purpose of this rule is to require a trustee to maintain a position where his every act is above suspicion, and the trust estate, and it alone, can receive, not only his best services, but his unbiased and uninfluenced judgment. Whenever he acts otherwise, or when he has placed himself in a position that his personal interest has or may come in conflict with his duties as trustee, or the interests of the beneficiaries whom he represents, a court of equity never hesitates to remove him. In such circumstances the court does not stop to inquire whether the transactions complained of were fair or unfair; the inquiry stops when such relation is disclosed.

*Clark,* 144 S.E. at 789.

The defendant bank was in a position of obvious and pervasive conflicts of interest. It is a wholly owned subsidiary of FSC. As trustee it owns nearly 40% of FSC stock. The district court recognized that a conflict of interest arose from the bank's holding in trust stock of its parent. The bank's trust department manual recognizes this conflict. A trustee's ownership of its own stock, unless consented to or waived, is inconsistent with the rule of undivided loyalty. The rule of undivided loyalty in this situation is based upon the possibility that circumstances may arise in which the trustee and its officers and directors are in a position when determining whether to sell or retain the stock they cannot appraise the problem with the same detachment with which they approach the sale of other securities. IIA Austin W. Scott & William F. Fratcher, *The Law of Trusts* § 170.15, p. 369; *Comptroller's Handbook,* p. 3. As the district court noted, the rule is no different when the stock owned is that of an affiliated corporation. The trustee may be tempted to favor itself or the affiliate. See *Albright v. Jefferson County Nat'l Bank,* 292 N.Y. 31, 53 N.E.2d 753, 151 A.L.R. 897 (N.Y.1944). The question is not whether the trustee and the affiliated corporation are separate

legal entities but whether the trustee has placed itself in a position where its interests, or the interests of its affiliate, may conflict with its duties to its beneficiaries. The wholly owned subsidiary-parent relation with common management is the paradigm of affiliation.

Connection between the bank and FSC reached far beyond ownership of stock. Management of the two corporations is overlapping and interlocking. The summary judgment evidence discloses that the bank and the holding company are tightly bound together by a web of overlapping duties, responsibilities, and relationships, by cross-assignment of principal officers and directors of the bank and of FSC, and of members of the trust committee of the bank, and by compensation of principal officers. At times relevant to this case Morgan Murphy was chairman of the board, president, and chief executive officer of FSC and chairman of the board and chief executive officer of the bank. Douglas Wren was president and chief operating officer of the bank and executive vice president and chief operating officer of FSC. Both served on FSC's executive committee which also served as the compensation committee.[3] Both served on the bank's trust committee. The head of the bank's trust department served on the trust committee and was a director of the bank and of FSC. The other members of the trust committee were FSC directors. Two members of the trust committee served on FSC's executive committee. Bank officers, including Murphy and Wren, were compensated directly by FSC, not by

---

[3]Murphy was a voting member of the compensation committee but changed to nonvoting status pursuant to a recommendation made in connection with an offering of stock discussed below.

the bank, and the bank in turn paid FSC a management fee.

Thus, the bank's conflicts of interest that exist because of these relationships run far more broadly and more pervasively—and affect the issues in this case to a much greater extent—than corporate trustee A owning stock in corporation B.

III. The claim arising from the First Alabama approach

The First Alabama approach was not to the bank but to FSC. It originated with members of plaintiff's family who are shareholders of FSC. Wishing to see FSC merged with some other banking entity, they approached First Alabama with the suggestion for discussion. FSC was committed to a non-merger policy. It considered this to be in the best interests of stockholders, employees, and the area of South Georgia in which it operated. On behalf of FSC, and as a courtesy to the family members who had approached First Alabama, Murphy and Wren met one time with representatives of First Alabama. They told First Alabama that FSC was not interested. First Alabama followed up with a letter to Murphy, as chief executive officer of FSC, expressing continuing interest and describing possible benefits of a merger, and stating the hope of additional meetings.

Murphy reported the First Alabama approach to a meeting of the FSC board. A director expressed dissatisfaction that the First Alabama approach had originated with a stockholder rather than the board. Murphy considered that he had been reprimanded for talking with First Alabama and told the board he would "stay the course" with the mandate that FSC remain independent. Later an attorney for FSC talked with an officer of First Alabama who told him that

First Alabama made no offer, would not make one unless solicited, and would not be interested without active support from FSC management.  But, if FSC ever wanted to sell, First Alabama would be interested.  There the First Alabama matter ended.

The First Alabama matter was not presented to the bank for its consideration as trustee, although its principal officers and directors knew of it since they were officers and board members of FSC.  There is evidence that Murphy did not fully inform the trust committee of the level of First Alabama's interest.  At least some committee members never saw the First Alabama follow-up letter. The matter was never presented to the trust committee for its consideration, though that committee is said to make all significant decisions concerning trusts and the interests of beneficiaries of trusts.  Indeed, the common management of FSC and the trustee bank, in testimony and in the bank's contentions on this appeal, do not understand, or do not recognize their duties with respect to trust beneficiaries.  Rather they assert that there is such identity of interests that action taken on behalf of FSC meets trust law requirements of the bank's duty of loyalty to beneficiaries.  Murphy testified—and the bank argues on appeal—that once officers and directors act, wearing their FSC hats, the matter is ended.  All responsibility to the bank as trustee and to trust beneficiaries is discharged, so that trust beneficiaries have suffered no harm.  The bank asserts that the interests of a trust beneficiary whose trust holds FSC stock are identical to the interests of a non-trust shareholder of FSC.  It says that officers and directors of FSC acted to benefit all shareholders when they

turned aside the First Alabama proposal. As the bank puts it, since all FSC shareholders had the same interests, beneficiaries of trusts owning FSC stock have nothing of which to complain. Plaintiff's expert witness Ken C. Coker, an experienced former trust officer, described this viewpoint of the bank as "grossly improper."

The bank makes a second contention based upon identity of personnel, i.e., it was unnecessary for the trust committee of the bank to consider the First Alabama proposal because FSC and the bank have common directors, and trust committee members are FSC directors, so it would have been fruitless for them as committee members to reconsider what they had already rejected as directors of FSC. The necessity for independent consideration, as an implementation of undivided loyalty, is brushed off by the defendant as "smoke and mirrors."

Also, there is evidence that some of the officers and directors of the bank are unfamiliar with the obligations placed upon them by trust law in general and conflicts of interest in particular, and by the bank's own policies concerning trusts as reflected in its manual. Some were unaware of a trustee's duty of undivided loyalty. Murphy had never seen the trust department's manual of policies and procedures and did not know of any written procedures addressing conflicts between the interests of trusts and the interests of FSC. It appears that, in the bank's transactions with FSC, the trust committee never independently examined the interests of beneficiaries of trusts holding FSC stock.

Expert witness Coker testified that a merger could jeopardize

the positions and salaries of Murphy and Wren. In *Clark v. Clark* trustees voted stock held by them in trust to elect them as corporate officers and to pay themselves handsome salaries. The stock depreciated in value and the beneficiaries sued to charge them with the loss. The Georgia Supreme Court held:

> They are not in a position to impartially consider and decide this question [whether to sell the stock and reinvest]. Their duties as trustees and their individual interests conflict. If this stock were sold, the defendants would or might lose their offices in this corporation and the emoluments thereof, which are considerable and substantial. The retention of this stock by the defendants is their only means by which the defendant Clark can be secure of his position of president of the Sutherland Manufacturing Company, and its prerequisites. These defendants may be possessed of sufficient ability to postpone interest to duty, but by the imperative interdict of the law they are forbidden to incur the hazard of the temptation. *Elias v. Schweyer,* 17 Misc.Rep. 707, 40 N.Y.S. 906, 908 [ (1896) ]. The defendants, by electing themselves to these offices in this company, and by accepting salaries as such, have placed themselves in a position whereby their personal interests may come directly in conflict with, and, to a certain extent, antagonistic to their duties as trustees. It is not necessary to determine that they have acted in bad faith, or that they have received from the corporation sums in excess of what their services were reasonably worth.

*Clark,* 144 S.E. at 790. With particular respect to the First Alabama approach, Coker testified that the bank's trust committee should have obtained legal independent counsel and advice on behalf of the interests of beneficiaries of trusts holding FSC stock. FSC knew there was shareholder interest favoring a merger. Murphy testified that he would not consider permitting the trust committee to obtain independent advice with respect to a transaction that might involve a conflict between the bank as trustee and FSC. And, in this appeal, the bank scoffs at obtaining outside counsel to consider the interests of beneficiaries as a waste of shareholders' money.

We have considered whether as a matter of law the trustee breached its duty of loyalty by failing to "encourage, prompt, and if necessary join with other stockholders" of FSC to require FSC to engage in discussion with First Alabama. Plaintiff does not contend in this suit that there must be a merger with First Alabama. What he does assert is that the bank breached its fiduciary duty by not encouraging, prompting or joining with others to require FSC, which maintained a no-merger policy, to negotiate with First Alabama.

It cannot be said that the matter of whether the parent should consider a proposed merger was not a matter of interest to beneficiaries of the bank as trustee. Murphy conceded in his testimony that the bank as trustee should make a determination of whether a proposed merger would be in the best interests of a trust beneficiary, and if the bank thought it was not in the beneficiary's best interest it should voice opposition to it and vote against it. The district court recognized that a trustee authorized to retain stock may be required to dispose of it in consequence of a merger.

> Trustees who are directed or authorized by the terms of their trusts to retain existing investments in corporate stock may be under a duty to dispose of these investments if, as a consequence of mergers or acquisitions, the essences of the underlying enterprises are transformed. 76 Am.Jr.2d, Trusts § 510. When evaluating whether the shares of a new enterprise are equivalent to the original investment one should compare, *inter alia,* the old and new corporations' spheres of activity and capital structures. *Hirsh v. Hirsh,* 209 Va. 630, 634, 166 S.E.2d 286, 288-89 (1969).

*Ledbetter v. First State Bank & Trust Co.,* No. CA-93-124-1-ALB/AMER(DF), at 4 (M.D.Ga. March 14, 1995).

In the present case there is no proposed merger, only proposed

negotiations and a rebuff by a parent maintaining a no-merger policy. We cannot say as a matter of law that the bank did or did not violate its fiduciary duty. Whether it acted properly in maintaining a no-merger policy and rebuffing First Alabama as an implementation of that policy, and whether the bank should have acted to consider the interests of trust beneficiaries, are matters for a factfinder. Among the considerations implicated are conditions in the industry and in the community that might make no-merger the best policy for the bank, or an acceptable policy, or catastrophic; asserted reasons for the policy and for the decision not to negotiate; the definite versus inchoate nature of the First Alabama approach; the possible motivation of officers and directors who might wish to maintain their salaries and positions. As with other issues, discussed below, the burden was upon the trustee having adverse interests to prove that it did not act in bad faith, or for improper motives, and that it did not obtain benefits.

We turn to presumptions and burden of proof. The district court considered that paragraph 10 of the trust agreement required only that the defendant not act unreasonably and that the burden of proving unreasonableness was upon plaintiff. Paragraph 10 provides:

> (10) Without in any way limiting the authority vested in TRUSTEE with respect to the handling and management of trust property, it is, nevertheless, TRUSTOR'S preference and it is hereby expressed to be his personal preference that the TRUSTEE retain any corporate stock, partnership interest or other interest which forms a part of the trust property in which other descendants of TRUSTOR'S grandfather, W.B. Haley, or any one or more of them, own a controlling or a substantial amount of stock or interest. If notwithstanding the foregoing, TRUSTEE determines that it should sell any part or

all of such stock or interest, then it is very likely that the best market for such stock or interest may be any one or more of the other descendants of W.B. Haley or affiliates thereof.

Revocable Trust of Frederick D. Ledbetter at 4-5. Paragraph (9) provides that the trustee may not sell any asset having a fair market value exceeding $5,000 without prior written approval of the trustor.

The bank contends that paragraph 10 is a plenary waiver of the trustee's duty of undivided loyalty. That position cannot be sustained. When plaintiff and the bank were negotiating a trust agreement the bank's draft included these plenary provisions:

Trustor has the utmost confidence in the First State Bank and Trust Company and its affiliates, and he expressly relieves Trustee from any and all restrictions or claims of self-dealing or undivided loyalty that may arise hereunder.

*   *   *   *   *   *

In carrying out the foregoing, TRUSTOR expressly relieves TRUSTEE from any liability in connection therewith and expressly waives any requirements or restrictions relative to self-dealing or undivided loyalty.

*   *   *   *   *   *

[W]ithout limitation, the Trustee shall have all the powers that it may choose, in its sole discretion, to exercise, notwithstanding statutory or legal restrictions applicable to fiduciaries to the contrary ... all of which powers may be exercised without any order from or permission of any court.

R 3-76-5. Plaintiff rejected these provisions, and paragraph 10 appeared in the executed agreement.

A trustee may not hold in trust its own stock (or stock of an affiliate) unless given authority to do so. The principles applicable to the trustee's retention of its own stock apply to retention of holding parent company stock. A beneficiary may, however, authorize the trustee to retain as an investment its own

stock (or the stock of an affiliate) received from the trustor. Without authority to retain ownership the trustee must sell within a reasonable time. IIA *Scott,* § 170.15, at p. 371. Paragraph 10 is a waiver of the rule of undivided loyalty with respect to retaining as an investment FSC stock received from plaintiff as trustor. It is not a plenary waiver of the duty of undivided loyalty as that duty relates to future events and occurrences that are beyond the scope of mere authorized retention. Retain title to stock received from the grantor the trustee may do. Misuse or abuse its ownership the trustee may not do. Plaintiff does not complain of the trustee's retaining ownership but of alleged wrongs committed by the trustee as authorized holder of title. A trustee given authority to retain stock received from the trustor must not act in bad faith or abuse its discretion.

> Even where the trustee has discretion, however, the court will not permit him to abuse the discretion. This ordinarily means that so long as he acts not only in good faith and from proper motives, but also within the bounds of a reasonable judgment, the court will not interfere; but the court will interfere when he acts outside the bounds of a reasonable judgment.

III *Scott,* § 187, at p. 14. No matter how broad the language of the trust instrument may be in conferring discretion upon the trustee, he will never be permitted to act dishonestly or in bad faith. *Id.* § 187.4, at p. 44. Even if the trustee does not act in bad faith the court will interfere where he acts from an improper motive. *Id.* § 187.5, at p. 46. The fact that the trustee has an interest conflicting with that of the beneficiary is a circumstance that the court may properly consider in determining whether the trustee is acting from an improper motive in the exercise of a discretionary power. *Id.* § 187.5, at p. 47.

Additionally, the district court erred in construing paragraph 10 to require the bank to act "reasonably," which is not the standard of duty for a trustee having an adverse interest, and it incorrectly placed the burden of proof upon plaintiff. The burden was upon the bank to show that it did not act dishonorably or in bad faith or for improper motives and that it did not benefit from its actions and inactions.

These principles preclude the entry of summary judgment for defendant on the First Alabama claim.

## IV. The sale of FSC treasury stock

FSC proposed to sell about 88,000 shares of its stock held in trusts for which the bank was trustee, including plaintiff's trust. Some, if not all, of the shares were to be purchased by officers and directors of the bank and of FSC. Plaintiff and others consented but withdrew their consent after securing legal counsel, and the proposal was cancelled. Quickly thereafter FSC sold 100,000 shares of its treasury stock in a public offering. The bank asserts that the objects of the offering were to broaden ownership of its stock, increase public trading, and to serve as a "mandate" to rebuff potential purchasers of FSC. Plaintiff contends that there was no legitimate purpose, that the motive to chill any possible purchase or merger was improper, that the sale diluted his interest as represented by the shares in his trust, that his interests had to be considered, and that the bank failed to make any effort to stop the offering.

Murphy testified that FSC did not consider the interests of trust beneficiaries in the sale of FSC treasury stock but rather

was "taking stock public" to enhance the value to all shareholders. He could not say whether the trust committee of the bank—of which he was a member—ever discussed or considered the matter.

For the reasons we have discussed we hold, with respect to the sale of treasury stock, that the failure of the bank to consider and assert the interests of beneficiaries of trusts owning FSC stock was a breach of the bank's fiduciary duty as a matter of law. This was a firm and defined transaction, and the responsibility to beneficiaries was clear. The trustee's obligation of undivided loyalty to plaintiff was not eliminated by the fact that dilution of his interests, measured statistically, was not great, or that the decision may have been a reasonable pursuit of FSC's desire for self-preservation, or the argument that after the treasury stock was sold the market value of plaintiff's stock increased.

V. The resignation by the trustee

Plaintiff has not asked that the bank should be removed as trustee. Rather he says that he wants the bank to continue as trustee and to comply with its fiduciary obligations. For example, he says that other members of his family own FSC stock, and should a merger be proposed that is in the interests of trust beneficiaries, the bank, as his trustee, can join with other family-member shareholders to support the merger (and possibly to control a decision). Also, he asserts that the value of his FSC stock was enhanced when held in conjunction with FSC shares owned by other trusts.

Four days after plaintiff filed this suit the trust officer, in a knee-jerk reaction, sent him a certificate for the FSC stock

held in his trust and invited him to consider revoking the trust. Instead plaintiff promptly amended his complaint to charge that returning the stock was a breach of trust and was intended to prevent him from asserting the claims that had been made in his original complaint by depriving him of standing. The bank then resigned as trustee.

The complaint was not amended to allege that the bank breached its obligations by resigning. However, we consider this issue because it was tried by consent—presented by the parties in the district court and decided by it, and presented to us on appeal. Coker testified that the return of the stock and the resignation violated the trust agreement, the bank's policy manual, and commonly accepted principles in the industry. The district court held that the resignation was not inappropriate, because the trust agreement authorized the bank to resign or revoke the trust on 30 days notice, and the trustee, accused of acting disloyally, had acted appropriately to relieve the situation. And, the court added, in view of the differences between the parties, if asked, it would have permitted the bank to resign.

A trustee may not relieve itself of its role or its duties merely because it wishes to. It may resign with permission of a proper court, or with the consent of the beneficiaries, or in accordance with the terms of the trust agreement. II *Scott,* § 106, at p. 96.

The power to resign, like other discretionary powers possessed by a trustee with conflicts of interest, must be exercised in good faith, for proper motives, and within the bounds

of proper business judgment, and the burden of proof rests on the trustee. The bank could have sought permission of a court to resign pursuant to O.C.G.A. § 53-12-175, citing disagreement between the beneficiary and the trustee, but it did not do so. A petition to the court would have to be served on the beneficiary, and it would have to be shown, presumably after an opportunity by the beneficiary to be heard, that the resignation would not be disadvantageous to the trust. O.C.G.A. § 53-12-175(a)(3)(F).

Plaintiff's claim that the trustee resigned for improper motives and without regard to his interests could not be disposed of by summary judgment.

### VI. Compensation to bank officers

The salaries of Murphy and Wren and two other principal officers of the bank are paid by FSC. The bank pays FSC a management fee. This is explained on the ground that the officers provide service for the bank and FSC (and thus for the other subsidiary bank). So that all entities can fairly share in the compensation of those officers they are paid by FSC, and the subsidiaries pay management fees to FSC, which in turn pays the officers.

Plaintiff contends these payments by FSC to the bank officers violate O.C.G.A. § 53-6-151, which we set out in the margin.[4]

---

[4]53-6-151. Compensation of resident executor or trustee by corporation or business enterprise for rendition of certain services; execution and approval of contract.

(a) Any executor of a decedent resident of this state and any trustee resident in this state may receive compensation for services, as specified in this subsection, from a corporation or other business enterprise, where the estate of the decedent or the trust estate owns an interest

Subsection (d) points out that the statute was enacted to permit extra compensation to be paid to a trustee for "business management and advisory services" without having to apply to the

---

in the corporation or other business enterprise, provided that:

> (1) The services provided by the fiduciary to the corporation or other business enterprise are of a managerial, executive, or business advisory nature;
>
> (2) The compensation received for the services is reasonable; and
>
> (3) The services are performed and the fiduciary is paid pursuant to a contract executed by the fiduciary and the corporation or business enterprise, which contract is approved by a majority of those members of the board of directors or other similar governing authority of the corporation or business enterprise who are not officers or employees of the fiduciary and are not related to the fiduciary and provided the contract is approved by the judge of the probate court of the county in which the administration proceeding is pending or which is the situs of the trust.

(b) Any executor receiving compensation from a corporation or other business enterprise for services to it as described in subsection (a) of this Code section shall not receive extra compensation in respect to such services for extraordinary service as provided in Code Section 53-6-150; provided, however, that nothing contained in this Code section shall prohibit the receipt by the fiduciary of extra compensation for extraordinary services rendered in respect to other assets or matters involving the estate or trust.

(c) Nothing in this Code section shall prohibit the receipt by executors and trustees of normal commissions and compensation for the usual services performed by executors and trustees pursuant to law or pursuant to any fee agreement executed by the testator or settlor.

(d) The purpose of this Code section is to enable additional compensation to be paid to executors and trustees for business management and advisory services to corporations and business enterprises pursuant to contract, without the necessity of making application for extra compensation for extraordinary services rendered pursuant to Code Section 53-6-150.

probate court for approval of extra compensation for extraordinary services as otherwise would be required by § 53-6-150.

The position of the bank is, first, that this claim is a "nonsensical" attack on ordinary salaries paid to bank officers and on a bank's power to set the salaries of its officers. To the contrary, the claim questions salaries paid to officers of a trustee bank by a corporate affiliate whose stock the trustee holds in trust. Second, the bank says that the compensation paid by FSC is paid to the individual officers of the corporate trustee, not to the trustee itself. But this argument runs afoul of the corporate veil. Are the officers of the bank to be considered as the bank? Does the benefit to the trustee of being relieved from having to pay salary to its officers, a benefit conferred by the affiliate, violate common law trust principles? Third, the bank says that § 53-6-151 does not apply because the corporate trustee performs no service to FSC of a management, executive, or business advisory nature. Again, this encounters the corporate veil issue. Does the *bank* perform services for FSC when its principal officers and directors do—indeed they *are* FSC's senior management. Or, putting it another way, in this case does the difference matter? Additionally, the bank says that these officers had no duties relating to plaintiff's trust. Even if this is relevant, it is wrong. Both are members of the trust committee.

The bank's position exposes it to an additional question. If the compensation paid by FSC to the bank's officers is not "extra payment" required to be authorized pursuant to § 53-6-151 is it payment for "non-extra" managerial services performed in violation

of common law trust principles that, because of conflict of interest, a trustee may not serve as an officer of, or receive compensation from, a corporation whose stock the trustee holds?

Murphy testified that he had no understanding one way or the other whether a trustee could receive compensation from a corporation in which the trust owns stock. The trust committee never considered whether bank officers could properly receive compensation from the holding company.

The compensation issue could not be disposed of by summary judgment.

## VII. Remedies

The question of remedy for any claim found to have merit is for the district court. By statute Georgia specifically provides for numerous alternative causes of action and remedies, statutory and common law, for breaches of trust. O.C.G.A. §§ 53-12-191, 53-12-192, 53-12-193. We do not hold or imply that plaintiff can prove compensatory damages or that he is entitled to punitive damages or to any particular remedy or form of relief. These are district court issues. We do hold, however, that uncertainties of proving damages are not elements in determining whether a breach of trust has been committed.

REVERSED and REMANDED.