WOOD, Appellant,

v.

U.S. BANK, N.A., Appellee.

[Cite as *Wood v. U.S. Bank, N.A.*, 160 Ohio App.3d 831, 2005-Ohio-2341.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–040162.

Decided May 13, 2005.

William H. Blessing, for appellant.

Taft, Stettinius & Hollister LLP, and Timothy C. Sullivan, for appellee.

PAINTER, Judge.

{¶ 1} This case turns on a question of law that has received little judicial attention in Ohio. Does a trustee have a duty to diversify the assets of a trust when the language of the trust authorizes retention of a specific asset, namely stock in the corporate trustee?

{¶ 2} We hold that even if the trust document allows the trustee to "retain" assets that would not normally be suitable, the trustee's duty to diversify remains unless there are special circumstances. Of course, a trustee's duty to diversify may be expanded, restricted, eliminated, or otherwise altered by the terms of the trust.[1] But this statement is true only if the instrument creating the trust clearly indicates an intention to abrogate the common-law, now statutory, duty to diversify.

{¶ 3} Plaintiff-appellant, Dana Barth Wood ("Wood"), contests the trial court's denial of her motions for a directed verdict, judgment notwithstanding the verdict, and a new trial. Wood also claims that the trial court erred by rejecting instructions based on Ohio's codification of the Uniform Prudent Investor Act ("UPIA")[2] and that the court prejudiced the jury by adopting the abuse-of-discretion and waiver-and-estoppel instructions of defendant-appellee, U.S. Bank.

---

1. See R.C. 1339.52(C).

2. R.C. 1339.52 et seq.

## I. The Trust

{¶ 4} Wood's husband, John Wood II (we will use his first name because there are other Woods in the case), was a prominent Cincinnati attorney with estate-planning experience. John created a trust worth over $8 million. Wood was a beneficiary of the trust. John served as trustee during his lifetime and named Star Bank the successor trustee. Star Bank, formerly First National Bank of Cincinnati, later became Firstar Bank. U.S. Bank is the successor-in-interest to First National, Star, and Firstar. At this writing at least, it is still U.S. Bank. Because it was the language used through most of the trial, we refer to the trustee as "Firstar" and the disputed stock as "Firstar stock." Nearly 80 percent of the trust assets were in Firstar stock. The rest was mostly Cincinnati Financial Corporation stock.

{¶ 5} John modified his estate plan several times; the last modification took place in September 1998, shortly before his death. He modified it with the advice of an estate-planning attorney. Firstar trustees were permitted to retain, manage, and invest the stock that was in the trust "as they deem advisable or proper." The trust included a retention clause that allowed Firstar to retain Firstar stock—otherwise, it would have had to sell off the Firstar stock upon becoming trustee.

{¶ 6} The trust specifically gave Firstar the power "[t]o retain any securities in the same form as when received, including shares of a corporate Trustee * * *, even though all of such securities are not of the class of investments a trustee may be permitted by law to make and to hold cash uninvested as they deem advisable or proper." The unfortunate wording of this sentence makes it unclear whether the "advisable or proper"—a redundant couplet—applied to the cash only, not the other assets. Grammatically, that is the meaning. Luckily, our holding makes it unnecessary to construe this language; but we caution that this type of fuzzy drafting can create problems.

{¶ 7} The trust did not last long—John had directed the trustee to distribute almost all the trust assets to the beneficiaries after paying the debts and expenses of the estate. Beginning in early 1998, Firstar had custody of the trust assets.

## II. Reverse Diversification

{¶ 8} Shortly after John's death, Firstar's trust officers and the beneficiaries (including Wood) met to discuss the estate. Participants discussed the fact that John had signed two sets of estate-planning documents without clearly revoking the earlier documents. John had also not made a formal conveyance of the property in an earlier trust to the September 1998 trust. Ultimately, the beneficiaries agreed that the September trust controlled.

{¶ 9} At the meeting, Firstar recommended selling some stock to pay the debts and expenses of the estate and retaining the remainder pending the eventual distribution to the beneficiaries free of trust. The debts and expenses were nearly $4 million; the trust itself contained approximately $8 million, of which roughly $6 million was in Firstar stock. This plan did not call for selling any Firstar stock other than what was necessary to cover the taxes and other debts. Firstar trust officers premised the plan on Firstar stock's strong earnings momentum at the time, so it called for a sale of two-thirds of Cincinnati Financial stock and only about ten percent of the Firstar stock.

{¶ 10} Since the original composition of the trust was 82 percent Firstar stock and 18 percent Cincinnati Financial stock, selling more of the Cincinnati Financial stock meant that the final trust was approximately 86 percent Firstar stock and only 14 percent Cincinnati Financial stock. The trust officers and Sean Wood (one of the other beneficiaries) testified that the parties agreed to the distribution plan. Firstar estimated that it would take 18 to 20 months to finalize the estate. At trial, Wood agreed that she had seen the distribution plan and did not object to it at the meeting. But she emphasized that she had asked Firstar to diversify once the stock started increasing in value.

{¶ 11} Firstar held the assets during this time and did not diversify. Diversification is "imposed in the expectation that it will minimize the possibility of large losses of capital through the failure of only one of the investments in the entire portfolio."[3] In diversifying, the trustee should consider, among others, the following factors: (1) the purposes of the trust; (2) the amount of the trust estate; (3) financial and industrial conditions; (4) the type of investment, whether mortgages, bonds, or shares of stock; (5) distribution as to geographical location; (6) distribution as to industries; (7) the dates of maturity.[4]

{¶ 12} Firstar focused primarily on liquidating non-Firstar stock to raise estate-tax funds. Though approximately half of the Cincinnati Financial stock was sold (for around $1 million), only about ten percent of the Firstar stock was sold. Thus, Firstar stock made up an even higher percentage of the trust assets after the liquidation because there was so much of it to begin with.

{¶ 13} Because of a Firstar merger, Firstar's stock increased from about $21 per share in October 1998 to almost $35 per share in early 1999. In April 1999, Wood asked Firstar to sell some of the stock. Harvey Knowles, Wood's advisor, also requested diversification. Neither Wood nor her attorneys and financial

---

3. *Steiner v. Hawaiian Trust Co.* (1964), 47 Hawaii 548, 562, 393 P.2d 96.

4. Id. at 564, 393 P.2d 96.

advisors made any written request that Firstar diversify the trust assets. Firstar did not sell any stock as a result of these requests.

{¶ 14} Firstar's stock price plunged beginning in mid–1999. And by mid–2000, it was worth only $16 per share. It was around this time that Firstar made the final distribution to the beneficiaries. According to expert testimony based on calculations using an average mutual fund as the basis for estimating value, Firstar's failure to diversify cost Wood $771,099.

### III. A Lawsuit, a Jury Trial, and an Appeal

{¶ 15} Wood sued Firstar, asserting that Firstar had violated Ohio law by failing to diversify the assets of the trust. Firstar denied the allegations and raised the affirmative defenses of estoppel, waiver, consent, and ratification. At the close of the evidence, Wood moved for judgment. Wood claimed that, under R.C. 1339.54, Firstar had a mandatory duty to diversify absent special circumstances. She also argued that Firstar had made no attempt to show special circumstances that would have relaxed its mandatory duty to diversify and that no such circumstances existed. The trial court denied Wood's motion.

{¶ 16} Wood proposed jury instructions based on the UPIA.[5] The trial court rejected the statute-based instructions, and over Wood's objections, the trial court adopted Firstar's abuse-of-discretion and estoppel instructions.

{¶ 17} The jury returned a verdict against Wood. Wood moved for judgment notwithstanding the verdict ("JNOV") and for a new trial. The trial court denied these motions, and this appeal followed.

{¶ 18} Wood now assigns three errors. She asserts that the trial court erred by (1) overruling the motion for judgment at the close of the evidence and in denying the motion for JNOV; (2) refusing to instruct the jury in accordance with R.C. 1339.54(B) and instead providing the jury with an abuse-of-discretion standard; and (3) instructing the jury on estoppel.

### IV. To Diversify or Not to Diversify?

{¶ 19} Because the issue of a trustee's duty to diversify is dispositive, we first address the second assignment of error. Wood argues that the trial court erred by providing the jury with an abuse-of-discretion standard and by refusing to instruct the jury in accordance with R.C. 1339.54(B). She is correct.

{¶ 20} Generally, a party is entitled to the inclusion of its requested instruction if it is a correct statement of the law applicable to the facts of the

5. R.C. 1339.52 et seq.

case.[6] Jury instructions are proper if they correctly state the law as applied to the facts of the case and if "reasonable minds can properly reach the conclusion sought by the instructions."[7] And we review purely legal issues de novo.[8]

{¶ 21} We must therefore first determine whether Firstar had a duty to diversify. Duties owed by a trustee to the beneficiaries are well established. "A trustee shall diversify the investments of a trust unless the trustee reasonably determines that, because of special circumstances, the purposes of the trust are better served without diversifying."[9] This duty may be expanded, restricted, eliminated, or otherwise altered by the trust instrument.[10] This duty, imposed by the UPIA, is the same one recognized by the common law; the common law is now codified.

## V. It Means what it Says–And Nothing More

{¶ 22} The language of John's last trust was unambiguous. It granted Firstar the power to retain its own stock in the trust even though Firstar would ordinarily not have been permitted to hold its own stock. Specifically, Firstar had the power "[t]o retain any securities in the same form as when received, including shares of a corporate Trustee * * *, even though all of such securities are not of the class of investments a trustee may be permitted by law to make and to hold cash uninvested as they deem advisable or proper."

{¶ 23} Wood now presents "The Rule of Undivided Loyalty" to support her claim that the retention language in the trust did not lessen Firstar's duty to diversify.[11] This rule states that "[t]he foremost duty which a fiduciary owes to its beneficiary is undivided loyalty."[12] This rule prohibits the trustee's ownership of its own stock.[13] But it does not apply to prohibit ownership when the trustor gives the trustee the "authority to retain stock received from the trustor."[14] The

---

6. *Murphy v. Carrollton Mfg. Co.* (1991), 61 Ohio St.3d 585, 575 N.E.2d 828.

7. Id.; *Cincinnati Gas & Elec. Co. v. Chevrolet,* 153 Ohio App.3d 95, 2003-Ohio-1367, 791 N.E.2d 1016.

8. See *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.* (1996), 76 Ohio St.3d 521, 1996-Ohio-298, 668 N.E.2d 889; *Carrollton Mfg. Co.,* 61 Ohio St.3d 585, 575 N.E.2d 828.

9. R.C. 1339.54(B).

10. R.C. 1339.52(C).

11. *In re Trusteeship of Stone* (1941), 138 Ohio St. 293, 20 O.O. 369, 34 N.E.2d 755.

12. *Ledbetter v. First State Bank & Trust Co.* (C.A.11, 1996), 85 F.3d 1537, 1540.

13. Id.

14. Id. at 1544; see, also, Restatement of the Law 3d, Trusts (1992), Sections 227(b) and 229, Comment d.

only restriction to the exception is that the trustee "must not act in bad faith or abuse its discretion."[15] But because the trustee still has the duty to act prudently, and diversification is normally called for, the retention language in this case did not affect the duty to diversify.

{¶ 24} The retention clause merely served to circumvent the rule of undivided loyalty. The trust did not say anything about diversification. And the retention language smacked of the standard boilerplate that was intended merely to circumvent the rule of undivided loyalty—no more, no less. There were significant tax consequences that precluded John from diversifying by selling the Firstar stock during his lifetime, but that hurdle was removed upon his death. Had John wanted to eliminate Firstar's duty to diversify, he could simply have said so. He could have mentioned that duty in the retention clause. Or he could have included another clause specifically lessening the duty to diversify. But he did not. We hold that the language of a trust does not alter a trustee's duty to diversify unless the instrument creating the trust clearly indicates an intention to do so.

{¶ 25} Wood also cites R.C. 1339.56 and 1339.54(B). As we have already said, these provisions codified the common law, imposing mandatory investment standards upon the trustee, including the duty to diversify. Under R.C. 1339.54(B), there is a single exception for the duty to diversify.[16] This duty arises when the trustee "reasonably" determines that that there are "special circumstances."[17] In this case, the question of special circumstances was never presented to the jury, even though identifying special circumstances was the only way that Firstar could possibly have been relieved of its duty to diversify.

{¶ 26} In response, Firstar cites R.C. 1339.52(C) and (D). R.C. 1339.52(C) states, "Sections 1339.52 to 1339.61 of the Revised Code may be expanded, restricted, eliminated, or otherwise altered, without express reference to these sections by the instrument creating a trust." R.C. 1339.52(D) states, "A trustee is not liable to a beneficiary of a trust to the extent the trustee acted in reasonable reliance on the provisions of the trust."

{¶ 27} The Third Restatement of Trusts states, "In making and implementing investing decisions, the trustee has a duty to diversify the investments unless, under the circumstances, it is not prudent to do so."[18] And with regard to a

---

15. Id.

16. R.C. 1339.54(B).

17. Id.

18. Restatement of the Law 3d, Trusts (1992), Section 227(b).

trustee's duty regarding original investments, the comments to the Restatement indicate that a broad generalization is not enough to relieve a trustee of its duty to diversify:

{¶ 28} "A general authorization in an applicable statute or in the terms of the trust to retain investments received as a part of a trust estate does not ordinarily abrogate the trustee's duty with respect to diversification or the trustee's general duty to act with prudence in investment matters."[19]

{¶ 29} This is precisely what the retention language here was—a general authorization. The Restatement continues, "The terms of the trust, however, may permit the trustee to retain all the investments made by the settlor, or a larger proportion of them than would otherwise be permitted. Thus, a trust may be created by a will that directs or authorizes the trustee to retain all of the securities bequeathed to the trustee; or the will may provide that any or all such securities or some specific securities may be retained, as the trustee deems proper, without regard to the ordinary requirement of diversification."[20] But the retention language here did not give the necessary authorization or direction.

{¶ 30} We hold that to abrogate the duty to diversify, the trust must contain specific language authorizing or directing the trustee to retain in a specific investment a larger percentage of the trust assets than would normally be prudent. The authorization to "retain" here was not sufficient—it only authorized the trustee to retain its own stock—something it could not otherwise do.

{¶ 31} We note that the UPIA has received little judicial attention in Ohio—or elsewhere. At least one other jurisdiction has held that parallel statutory language concerning the duty to diversify applies only to initial investments made by the trustee—not to investments that the trustee chooses to retain.[21] But that decision is flawed in many respects, including relying upon a totally inapposite case. We hold that the duty to diversify attaches to all investments, even those already held in trust, absent special circumstances or explicit authorization not to diversify.

{¶ 32} The instructions here stated, "The normal rule is that a trustee shall diversify the investments of a trust. If by the terms of the trust the trustee is permitted but not directed to retain investments originally transferred to the trust, the trustee is not liable for retaining them where there is no abuse of

---

19. Restatement of the Law 3d, Trusts (1992), Section 229, Comment d.

20. Id.

21. See *Atwood v. Atwood* (Okla.Civ.App.2001), 25 P.3d 936.

discretion in doing so. The trustee is not liable for the exercise of its discretion so long as the trustee acts in good faith and does not abuse its discretion. An abuse of discretion occurs if the trustee acts dishonestly or with an improper motive or fails to use his judgment or acts beyond the bounds of a reasonable judgment."

{¶ 33} Under the facts of this case, we reject this instruction-it virtually assured a verdict for Firstar, as there were no allegations of dishonesty or fraud. Other courts have come to the same conclusion.[22]

## VI. Timing and Special Circumstances

{¶ 34} Contrary to Firstar's assertions, Wood's argument that Firstar should have diversified is not reminiscent of the prohibited "peak-of-the-market" claim.[23] A trustee who is authorized to retain assets but sells them is not liable merely because the securities later rise in value, or vice versa.[24] Trustees should not be judged on hindsight. Few would become trustees if they were liable every time they did not sell stock at the most propitious chance.[25] But the problem here is that the trust would have benefited even more if Firstar had simply performed its duty to diversify. Wood's argument is not based on hindsight—it is simply based on Firstar's duty to diversify, absent special circumstances.

{¶ 35} The "special circumstances" language generally refers to holdings that are important to a family or a trust. For example, in *Brackett v. Tremaine*, [26] the Nebraska Supreme Court recently held that there was no duty to diversify when the asset in question was a piece of farmland that had a special meaning to the family. We realize that Firstar stock is not farmland. But perhaps it had a special relationship to the family or to the trust. Or perhaps it did not. Further, this was not the case of a controlling interest in a family business—which might normally be an example of special circumstances. Either way, this question was for the jury. But the trial court's instructions improperly removed that question from the jury's consideration.

{¶ 36} Because of the trial court's erroneous instruction here, the jury was not given the proper legal standard. The proper jury instruction would have simply

---

22. See, e.g., *Robertson v. Cent. Jersey Bank & Trust Co.* (C.A.3, 1995), 47 F.3d 1268; *First Alabama Bank, N.A. v. Spragins* (Ala.1987), 515 So.2d 962.

23. *In re Estate of Bentley* (1955), 163 Ohio St. 568, 57 O.O. 5, 127 N.E.2d 749.

24. Id. at 576, 57 O.O. 5, 127 N.E.2d 749.

25. See *Attorney Gen. v. Olson* (1963), 346 Mass. 190, 191 N.E.2d 132.

26. (2005), 269 Neb. 376, 693 N.W.2d 514.

quoted the appropriate statutory language, changing the ambiguous (to laypeople) *shall* to the proper *must:* "A trustee must diversify the investments of a trust unless the trustee reasonably determines that, because of special circumstances, the purposes of the trust are better served without diversifying."[27]

{¶ 37} Wood requested the proper instruction under the UPIA. The trial court's instructions did not achieve the same purpose: they did not even mention the "special circumstances" language, the only way that Firstar could have gotten around its duty in this case.

{¶ 38} Given the improper law to apply, the jury could have come only to the conclusion that it did—namely, that Firstar had not "abused its discretion" in retaining the Firstar stock. But with the proper instructions, the jury may have gone the other way. Thus, we must order a new trial. We sustain Wood's second assignment of error.

## VII. Seeking a JNOV

{¶ 39} Wood's first assignment of error questions the trial court's refusal to grant a directed verdict or JNOV. While we agree that Firstar had a duty to diversify, a directed verdict or JNOV would not have been proper.

{¶ 40} The standard for granting a motion for JNOV is the same as that for sustaining a motion for a directed verdict.[28] Two elements must be satisfied. We must first construe the evidence most strongly in favor of the nonmoving party.[29] And we must then determine whether reasonable minds could have come to only one conclusion that was adverse to the nonmoving party.[30]

{¶ 41} As we have already stated, the jury was not permitted to consider whether any special circumstances existed. In light of the incorrect standard given in the jury instructions, it is unlikely that the jury could even have considered the issues of consent or estoppel.

{¶ 42} While it is not clear from the record whether the beneficiaries specifically agreed not to diversify the trust portfolio, it is clear that the management and distribution plan did not call for any diversification. Further, there was testimony that all the beneficiaries initially agreed to the distribution plan—agreement that would be enough to negate a directed verdict.

---

27. R.C. 1339.54(B).

28. *Howell v. Dayton Power & Light Co.* (1995), 102 Ohio App.3d 6, 656 N.E.2d 957.

29. See *Posin v. A.B.C. Motor Court Hotel, Inc.* (1976), 45 Ohio St.2d 271, 74 O.O.2d 427, 344 N.E.2d 334.

30. Id.

{¶ 43} Wood may argue that there was no evidence of any special circumstances that could have eliminated Firstar's duty to diversify. But Harold Klink, who worked for Firstar, testified in a deposition that John had made all of his money from that stock and had insisted for years that it never be sold. He also stated that everybody at the October meeting felt the same way. Therefore, there was at least enough evidence of special circumstances to avoid a directed verdict.

{¶ 44} Viewing the evidence in the light most favorable to Firstar, we cannot say that reasonable minds could come to only one conclusion on any of these issues. A directed verdict or JNOV would therefore have been inappropriate.

{¶ 45} We accordingly overrule Wood's first assignment of error.

## VIII. Estoppel

{¶ 46} Wood's third assignment of error asserts that the trial court erred in instructing the jury on estoppel. The trial court gave the proper estoppel instruction after Firstar properly raised estoppel as a defense. The trial court therefore did not err in giving the estoppel instruction. The third assignment of error is not well taken.

{¶ 47} For the reasons given in our ruling on Wood's second assignment of error, we reverse the judgment entered in favor of Firstar and remand this case for a new trial.

Judgment reversed
and cause remanded.

HILDEBRANDT, P.J., and HENDON, J., concur.