DECISION.
{¶ 1} U.S. Bank National Association ("U.S. Bank")[1]
appeals the judgment of the trial court in favor of Fifth Third Bank and Elizabeth Gamble Reagan. We conclude that its assignments of error do not have merit, and we affirm the judgment of the trial court.
 {¶ 2} This case involves a trust that was established by Elizabeth Gamble Reagan in 2000. Reagan, a descendant of one of the founders of Procter Gamble ("PG"), had had a large amount of her PG stock stolen from her. Because the stock had been sold and because it had a low tax basis, Reagan had incurred a $2 million tax liability. Reagan met with her attorneys, Robert Kreidler and William Baechtold, and Bettina Ross, a trust officer at U.S. Bank, to devise a plan to replace the lost income. It was decided that Reagan would establish a charitable remainder unitrust ("CRUT") with $2 million of her remaining PG stock, and that U.S. Bank would serve as trustee. Under the terms of the CRUT, Reagan would receive eight percent of the CRUT's principal value each year, and upon her death, the remainder would be distributed to the University of Kentucky Equine Research Foundations, Inc., The Hole in the Wall Gang Fund, and Make-a-Wish Foundation ("the charities"). According to Reagan, U.S. Bank understood that one purpose of the CRUT was to diversify out of the PG stock.
 {¶ 3} U.S. Bank assigned Larry Zalants to be the investment officer for the CRUT. Zalants began to reduce the concentration of PG stock by selling shares of the stock each month. Zalants postponed the sale of PG stock when the price of the stock dropped. He resumed the diversification when the price began to go up.
 {¶ 4} At the end of the first year, the value of the CRUT was fifty percent less than it had been at the start of the year. Reagan appointed Fifth Third Bank ("Fifth Third") to replace U.S. Bank as trustee and filed a claim alleging that U.S. Bank had breached its fiduciary duty.
 {¶ 5} The case was tried before a jury. At the conclusion of the trial, the jury rendered a verdict in favor of Fifth Third and Reagan, and awarded damages of $1,040,222.
 Attorney General's Participation {¶ 6} The appellees served notice of their lawsuit on the Ohio Attorney General. According to the appellees, the attorney general was a necessary party because the CRUT was a charitable trust. Over the objection of U.S. Bank, the attorney general aligned himself with the appellees during the trial, and the assistant attorney general participated in voir dire and gave an opening statement and closing argument. In its first assignment of error, U.S. Bank now asserts that the trial court erred when it denied U.S. Bank's motion to preclude the participation of the attorney general in the case.
 {¶ 7} We first consider whether the attorney general was a necessary party in the lawsuit. R.C. 109.25 provides in part that "[t]he attorney general is a necessary party to and shall be served with process or with summons by registered mail in judicial proceedings, the object of which is to: * * * (C) [c]onstrue the provisions of an instrument with respect to a charitable trust[.]" U.S. Bank contends that because the proceeds of the CRUT were to be distributed to the charities only upon the termination of the CRUT, it was not a charitable trust.
 {¶ 8} R.C. 109.23(A) defines a charitable trust as "any fiduciary relationship with respect to property arising under the law of this state or of another jurisdiction as a result of a manifestation of intention to create it, and subjecting the person by whom the property is held to fiduciary duties to deal with the property within this state for any charitable, religious or educational purpose." An earlier version of R.C. 109.23
specifically excluded "trusts until such time as the charitable, religious or educational purpose expressed in such trust becomes vested in use or enjoyment." Despite the exclusion, the Ohio Supreme Court held in Brown v. Buyer's Corp. that "[w]here there is a present fixed and irrevocable duty on the holder of trust property to devote it to charitable purposes, such purposes expressed in the trust are vested in use and enjoyment even though the actual enjoyment of the benefits of the trust by the beneficiaries thereof may occur only in the future."[2]
Reagan's CRUT imposed upon U.S. Bank an irrevocable duty to devote the proceeds to the charities upon Reagan's death. We conclude that the CRUT was a charitable trust under the definition.[3]
 {¶ 9} Given that the CRUT was a charitable trust and that resolution of the complaint required the construction of provisions of the trust document, the attorney general was a necessary party to the proceedings and, as a necessary party, was properly permitted to participate in the trial.
 {¶ 10} We are unpersuaded by U.S. Bank's argument that the attorney general should not have been permitted to intervene because he did not first investigate the CRUT or U.S. Bank's role as trustee. R.C. 109.24 provides that the attorney general may investigate, but imposes no requirement that he do so. Nor are we swayed by U.S. Bank's contention that the attorney general should not have been permitted to participate because he did not intervene as a plaintiff or file a cross-claim. In the caption of the complaint, the attorney general is not labeled as either a plaintiff or a defendant. But the summons served on the attorney general stated that he was a defendant, and the attorney general filed an answer. After discovery had progressed in the case, the attorney general later amended his answer to clarify his position that U.S. Bank had breached its fiduciary duty. The attorney general's amended answer put U.S. Bank on notice of the attorney general's claims in the case. To refuse to countenance the attorney general's participation in the trial because he was improperly labeled on the complaint would be to elevate form over substance.[4] The trial court properly permitted the attorney general's participation. The first assignment of error is overruled.
 Plaintiffs' Witnesses {¶ 11} In its second assignment of error, U.S. Bank asserts that the trial court erred when it allowed Fifth Third's witnesses to instruct the jury on the law and to offer parol evidence.
 {¶ 12} Robert Kreidler was an attorney in the firm that represented Reagan. He testified that he had been involved in the initial discussions that had resulted in the creation of the trust.
 {¶ 13} During cross-examination, U.S. Bank's attorney asked Kreidler whether the trust document stated that diversity was important. Over the objection of U.S. Bank's attorney, Kreidler was asked by Fifth Third's attorney during redirect if "there [was] anything in [the trust] document that require[d] diversification." Kreidler responded, "Well, the law of Ohio is going to say, you know that you have diversification in a trust. I mean, law of any state is really going to say that. Scott on Trusts is our Bible in this area, the professor that wrote all this, and diversification is a primary rule of administering a trust."
 {¶ 14} The trial court overruled U.S. Bank's motion to strike Kreidler's answer. But the court told the jury, "I will tell the jury, though, that as far as the law goes, when you get the jury instructions I'll tell you what the law is. Other people may have opinions. Maybe they're right, maybe they're not, but I'll tell you what the law is."
 {¶ 15} William Baechtold worked with Kreidler and drafted the trust agreement. Over the objection of U.S. Bank, Baechtold was permitted to explain a section of the trust agreement. Baechtold explained that the section in question was called a "powers clause" and that the section provided for "the discretion on the part of the trustee that tells them they can [retain the assets] if they think it's prudent, but if it's not prudent then they're subject to the same rules as any trustee that is supposed to exercise good judgment." Baechtold went on to state that the powers clause allowed discretion so that the trust would not run afoul of the Internal Revenue Service's requirement that the person establishing a trust not retain any powers over the trust. Baechtold also explained that the next section allowed the trustee to sell assets.
 {¶ 16} Fifth Third's expert witness John Peavy testified that U.S. Bank's actions as trustee were governed by the Ohio Prudent Investor Act. Peavy went on to say that the CRUT agreement did not relieve U.S. Bank of its obligations under the act. During Peavy's testimony, the court again instructed the jury, "Ladies and gentlemen, if expert witnesses offer opinions when it does deal with their area of expertise, it's fine. Judge it as you will. When it deals with areas of the law you'll be governed by what is in my jury instructions."
 {¶ 17} We review the trial court's evidentiary decisions under an abuse-of-discretion standard.[5] We conclude that the trial court did not abuse its discretion. The parol evidence rule prohibits the introduction of extrinsic evidence to vary an unambiguous contract.[6] Here, the testimony in question was not offered to vary the clear terms of the CRUT. Rather, Kreidler and Baechtold testified about why, if diversification was an overriding purpose of the CRUT, the CRUT did not specifically provide that the trustee had to diversify immediately. U.S. Bank opened the door to much of the testimony when it suggested that the CRUT did not require it to diversify. We conclude that the trial court did not abuse its discretion when it allowed this testimony. Nor did the trial court err when it allowed Peavy to testify about why the terms of the CRUT did not change his opinion about whether U.S. Bank had acted prudently. Any confusion that the jury may have had about whether the witnesses were stating the law was clarified when the trial court repeatedly stated that it would instruct the jury on the applicable law. The second assignment of error is overruled.
 Fifth Third's and the Attorney General's Comments During Trial {¶ 18} U.S. Bank contends in its third assignment of error that the trial court erred when it allowed the attorneys representing Fifth Third and the attorney general to incite the jury "by overt appeals to passion, prejudice and sympathy." In its appellate brief, U.S. Bank lists seven allegedly improper statements that were made during voir dire, opening statements, and closing arguments. But U.S. Bank did not object to any of the statements during the trial, so we must review the statements to determine if the trial court's failure to sua sponte strike the comments was plain error.
 {¶ 19} "A `plain error' is obvious and prejudicial although neither objected to nor affirmatively waived which, if permitted, would have a material adverse affect on the character and public confidence in judicial proceedings."[7] We conclude that none of the statements made by counsel for Fifth Third and the attorney general rose to the level of plain error. The third assignment of error is overruled.
 Judgment Notwithstanding the Verdict {¶ 20} In its final assignment of error, U.S. Bank asserts that the trial court erred when it overruled its motion for judgment notwithstanding the verdict or, in the alternative, for a new trial.
 {¶ 21} A motion for judgment notwithstanding the verdict or, in the alternative, for a new trial should be granted when "the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party[.]"[8]
 {¶ 22} U.S. Bank contends that the CRUT exculpated it from any liability for the losses in the value of the trust assets. It points to R.C. 1339.52(C), which provides, in part, that the duty to diversify "may be expanded, restricted, eliminated, or otherwise altered, without express reference to these sections by the instrument creating the trust." U.S. Bank argues that the CRUT restricted its duty to diversify from the PG stock, and that, as a matter of law, it should not have been held liable for the trust's decrease in value.
 {¶ 23} Recently, this court held that "even if the trust document allows the trustee to `retain' assets that would not normally be suitable, the trustee's duty to diversify remains, unless there are special circumstances."[9] Acknowledging that R.C. 1339.52(C) does allow for the duty to diversify to be altered, we stated such alteration could be accomplished "only * * * if the instrument creating the trust clearly indicates an intention to abrogate the common-law, now statutory, duty to diversify." In this case, the CRUT provided in part that "[t]he trustee shall have expressly the following powers * * * to retain, without liability for loss or depreciation resulting from such retention, original property, real or personal, received from Grantor or from any other source, although it may represent a disproportionate part of the trust." We conclude that this language did not clearly indicate the intention to abrogate the duty to diversify.
 {¶ 24} Even if we determined that the CRUT had relieved U.S. Bank from the duty to diversify, Fifth Third presented evidence that Zalants, as the investment officer, failed "to verify facts relevant to the investment and management" of the CRUT, as required by R.C. 1339.53(B). Fifth Third also argued that Zalants did not take into consideration the economic conditions, the tax consequences, and the need for liquidity when he chose to sell the PG stock gradually over the course of a year. This evidence was sufficient to create questions of fact that were properly resolved by the jury. The fourth assignment of error is overruled.
 {¶ 25} Because we conclude that the assignments of error do not have merit, we affirm the judgment of the trial court.
Judgment affirmed.
Hildebrandt, P.J., and Doan, J., concur.
[1] U.S. Bank was known as Firstar Bank, N.A., when this action was commenced. For clarity, the name U.S. Bank will be used throughout this decision.
[2] (1973), 35 Ohio St.2d 191, 299 N.E.2d 279, paragraph two of the syllabus.
[3] See, also, Uncrop v. Klein (Apr. 24, 1997), 8th Dist. No. 71117.
[4] See, generally, Shelton v. LTC Management Services, 4th Dist. No. 03CA10, 2004-Ohio-507.
[5] Hinkle v. Cleveland Clinic Found., 159 Ohio App.3d 351,2004-Ohio-6853, 823 N.E.2d 945, ¶ 28.
[6] Joseph v. Dever (Aug. 20, 1986), 1st Dist. No. C-840628.
[7] Schade v. Carnegie Body Co. (1982), 70 Ohio St.2d 207,209, 436 N.E.2d 1001.
[8] Civ.R. 50(A)(4); Texler v. D.O. Summers Cleaners ShirtLaundry Co., 81 Ohio St.3d 677, 1998-Ohio-602, 693 N.E.2d 271.
[9] Wood v. U.S. Bank, N.A., 160 Ohio App.3d 831,2005-Ohio-2341, 828 N.E.2d 1072, at ¶ 2.