[Cite as *Helton v. Fifth Third Bank*, 2019-Ohio-5208.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO


| | | |
|---|---|---|
| HELEN CLARKE HELTON, | : | APPEAL NO. C-180284 |
| | | TRIAL NO. 2015-003814 |
| CATHERINE T. CLARKE, | : | |
| | | *O P I N I O N.* |
| JAMES W. CLARKE, | : | |
| MARY ZIGO, | : | |
| and | : | |
| BRIDGET MURPHY, | : | |
| Plaintiffs-Appellants, | : | |
| vs. | : | |
| FIFTH THIRD BANK, | : | |
| Defendant-Appellee. | : | |


Appeal From: Hamilton County Court of Common Pleas, Probate Division

Judgment Appealed From Is: Affirmed in Part, Reversed in Part, and Cause
 Remanded

Date of Judgment Entry on Appeal: December 18, 2019


*Schlicter Bogard & Denton, Jerome J. Schlicter, Nelson G. Wolff* and *Andrew D. Schlicter*, and *Christopher R. Heekin Co. LLC* and *Christopher R. Heekin*, for Plaintiffs-Appellants,

*Vorys, Sater, Seymour and Pease LLP, Victor A. Walton, Jr., Nathaniel Lampley, Jr., Jacob D. Mahle, James B. Lind* and *Jessica K. Baverman*, for Defendant-Appellee.

**MYERS, Judge.**

{¶1}    Plaintiffs-appellants Helen Clarke Helton, Catherine T. Clarke, James W. Clarke, Mary Zigo, and Bridget Murphy, (collectively referred to as "the Clarke siblings") appeal from the trial court's order granting summary judgment to defendant-appellee Fifth Third Bank on their complaint asserting various claims regarding Fifth Third's management of two trusts of which they are beneficiaries.

{¶2}    Because the trial court correctly determined that the Clarke siblings' claim for breach of the duty to diversify was barred by the applicable statute of limitations, and that their claims for breach of the duty of impartiality and breach of trust/fiduciary duty were in essence additional claims for breach of the duty to diversify that were filed outside of the limitations period, we affirm its grant of summary judgment on those claims.    But because the Clarke siblings' claim for unjust enrichment was supported by different allegations of misconduct than those supporting the claim for breach of the duty to diversify, we find that the trial court erred in determining that it stemmed from the alleged breach of the duty to diversify, and we reverse the trial court's grant of summary judgment on that claim.

*Factual and Procedural Background*

{¶3}    The Clarke siblings are current income beneficiaries of two trusts established by their great uncle William C. Sherman.  In 1939, Sherman created an irrevocable inter vivos trust.  As relevant to this appeal, the income beneficiaries of this trust were his niece Helen Hook Clarke (the Clarke siblings' mother) and her descendants, and Sherman's brother, John Q. Sherman ("JQS"), and his descendants.  While their mother was alive, the Clarke siblings were remainder

beneficiaries of this trust, but they became income beneficiaries when their mother passed away in 2015.

{¶4} Sherman also established a testamentary trust for the benefit of his sister Helen Sherman Hook and her descendants, who were Helen Hook Clarke (her daughter) and the Clarke siblings. As with the inter vivos trust, the Clarke siblings were remainder beneficiaries of this trust until their mother passed away in 2015, at which time they became income beneficiaries.

{¶5} Fifth Third was named in the trust documents as a successor trustee for both trusts, and in 1980, it became the sole trustee. Both the inter vivos trust and the testamentary trust granted the trustee broad discretion over the trusts' investments and provided that the trustee had discretion "to retain and continue to hold as a part of the Trust Estate any property or investment owned by [Sherman] at the date of [his] death without liability for depreciation or loss occasioned by doing so."

{¶6} Sherman funded the trusts with shares from Standard Register, a paper company that he had founded with JQS. Pursuant to Standard Register's corporate documents, shares in the company owned by the trusts or family members of the Sherman and Clarke families had "super-voting" rights, which granted them five votes per share. But if the shares were sold to the general public, they were converted to common stock, possessing only one vote per share. With these super-voting rights, the two trusts established by Sherman controlled approximately 33 percent of the voting power of Standard Register. A separate trust established by JQS for the benefit of his descendants, (the "JQS trust"), also had super-voting rights and controlled approximately 40 percent of Standard Register's voting power. This percentage of voting power gave both the Sherman trusts and the JQS trust "negative control" over the company and allowed them to block certain actions taken by the company.

{¶7} Income beneficiaries of the trusts received ongoing distributions. Between 1981 and her death in 2015, Helen Hook Clarke received approximately 72 million dollars in distributions from the two trusts.

{¶8} After becoming sole trustee, Fifth Third in 1980 was concerned with the trusts' concentration in Standard Register stock, and in 1985 it hired Morgan Stanley to prepare a report on possible ways to diversify the trusts. Morgan Stanley's report discussed the pros and cons of diversifying the trust in the following manners: a rule 144 sale; private placement; a leveraged buyout; company repurchase of trust stock; a secondary offering; a secondary offering/share repurchase; and a sale of the company. The report noted that a sale of the company would be unlikely absent cooperation from the JQS trust.

{¶9} The Clarke family was adamantly opposed to diversification. In 1986, the Clarke siblings, along with their mother and brother, David Clarke, III, sued Fifth Third to prevent it from selling any Standard Register stock held by the two trusts unless the sale was a part of a coordinated sale of all stock held by both trusts and the JQS trust. The lawsuit was resolved when the parties entered into a settlement agreement in 1987.

{¶10} In 1991, Fifth Third again engaged Morgan Stanley to prepare a report on the feasibility of diversification. This report suggested a secondary offering of the stock, as well as a combination of a secondary offering and a stock repurchase. Fifth Third did not feel that a secondary offering was a viable option because the Clarke family would lose the negative control over Standard Register that it possessed.

{¶11} The value of Standard Register stock declined over time. Fifth Third monitored Standard Register's performance and continued to consider diversification. In 2006, Fifth Third hired a management consultant to examine Standard Register and advise Fifth Third on potential diversification options for the trusts. This consultant advised that the only feasible way to diversify was a complete

sale of Standard Register. Fifth Third had various discussions regarding Standard Register's declining performance with members of the Clarke family, particularly David Clarke, III, who was a member of the Standard Register Board and was viewed by Fifth Third to be the Clarke family representative. In 2007, several Fifth Third representatives met with Helen Hook Clarke, her husband, and David Clarke, III. At this meeting, the Fifth Third representatives expressed concern about the deteriorating values of the trusts and discussed diversification. Fifth Third records indicate that the Clarkes seemed to understand their concerns, but were not particularly troubled by them. Fifth Third had prepared printed materials expressing the concerns, which they gave to the Clarkes in attendance. They also gave the Clarkes copies of these materials to give to the Clarke siblings.

{¶12} While Fifth Third agreed that a sale of the entire company was the best way to diversify, no such sale occurred during this time period, and Fifth Third ultimately never diversified the trusts. This was due to a variety of circumstances, including the potential loss of negative control that would result from certain means of diversification; the Clarke family's perceived ongoing opposition to diversification, which was predominately derived from the parties' history and discussions with David Clarke, III; the capital structure of Standard Register, which allowed for internal family control and resulted in a loss of interest from potential investors; potential capital gains loss; a requirement in one of the trusts to act in concert with the JQS trust; and the JQS trust shareholders' refusal to sell.

{¶13} In 2008, after learning that Standard Register had rejected a 2007 offer to sell, which would have diversified the trusts, Fifth Third filed a Schedule 13D with the SEC. This filing disclosed the number of shares held in the trusts. It also stated:

> In the exercise of their fiduciary duties to their clients, the Reporting
>
> Persons are considering their alternatives with respect to the holdings

5

of Common Stock in the accounts held by them in their fiduciary capacity for their clients. Representatives of the Reporting Persons have met with the management of Standard Register and expect to maintain a dialogue with management regarding, among other things, Standard Register's operations, strategic direction, the extent to which it is achieving its current business plan, its capital structure and corporate governance and the Reporting Persons' expectation that management of Standard Register will pursue appropriate measures to enhance shareholder value. In addition, the Reporting Persons may communicate with other persons regarding Standard Register, including, without limitations, the board of directors of Standard Register, other shareholders of Standard Register and potential strategic partners.

{¶14} The filing also disclosed that Fifth Third would take an active role, including proposing a merger, reorganization, or sale if it thought prudent. And it stated that Fifth Third would continue to review its Standard Register holdings in accordance with its fiduciary duties.

{¶15} Fifth Third also scheduled a conference call in 2008 with all current and remainder beneficiaries of the Sherman trusts to discuss the SEC filing and the trusts' concentration in Standard Register stock, and it mailed the beneficiaries a copy of the script that was used during the conference call. As discussed later in this opinion, the lack of diversification was a topic of conversation.

{¶16} Due to Standard Register's declining performance, the dividend issued to Standard Register shareholders was reduced in 2009.

{¶17} Standard Register merged with Workflow One in 2013. Workflow One was the same company that had made an offer to purchase Standard Register in 2007.

{¶18} In 2014, Fifth Third sent the Clarke siblings a letter asking for their input as to whether the trusts should be diversified. Three of the Clarke siblings were in favor of diversification, while two siblings indicated that they were against diversification.

{¶19} Standard Register filed for bankruptcy in 2015, and it was subsequently purchased by another company. The values of the two trusts established by Sherman have declined to almost zero.

{¶20} After becoming income beneficiaries following their mother's death in 2015 shortly after the bankruptcy, the Clarke siblings began receiving information from Fifth Third regarding the trusts' holdings that their mother, as the current beneficiary, had previously been receiving. These statements included the following language:

> With regards to trusts governed by the laws of Ohio, a beneficiary may not commence a proceeding against a trustee for breach of trust more than two years after the date the beneficiary, the beneficiary's representative or a beneficiary surrogate was sent a report that adequately disclosed the existence of a potential claim for breach of trust and informed the beneficiary, the beneficiary's representative or a beneficiary surrogate of the limitation period.

{¶21} On August 31, 2015, the Clarke siblings filed suit against Fifth Third, raising multiple claims concerning Fifth Third's management of the trusts' assets. Count I of the complaint asserted that Fifth Third had breached the common law, statutory, and trust duty to diversify. It specifically alleged that Fifth Third had breached the duty to properly and timely diversify the trusts, which continued to be heavily weighted and concentrated in Standard Register stock, and that this failure to diversify substantially diminished the value of the Clarke siblings' interest in the trusts.

{¶22} Count II of the complaint asserted a claim for a breach of the duty of impartiality. It alleged that Fifth Third "failed to factor into its judgment regarding investment and non-diversification any weight at all to the interest of" the Clarke siblings, and that Fifth Third failed to communicate with the Clarke siblings until it sent them a letter in 2014. Count III of the complaint asserted a claim for breach of trust/fiduciary duty, alleging that Fifth Third owed the Clarke siblings various fiduciary duties, including the duties of utmost good faith and undivided loyalty, and that it violated these duties by failing to consider the Clarke siblings' interest when making a decision regarding investments and nondiversification.

{¶23} Count IV of the complaint asserted a claim for unjust enrichment, alleging that "Fifth Third obtained and continues to retain benefits to which it is not entitled * * *, including but not limited to the fees which it took for the purpose of prudently managing trust assets, which, given its abdication of its duties (particularly the duty to diversify), [were] fees it did not earn." This count further alleged that Fifth Third had obtained these fees by way of constructive fraud and unjust enrichment. The complaint also sought to have Fifth Third removed as trustee and an injunction to prohibit Fifth Third from transferring any trust assets.

{¶24} Fifth Third moved for summary judgment on all counts in the complaint. It argued that the claim for breach of the duty to diversify was filed outside the applicable limitations period, and that the remaining claims arose from the breach of the duty to diversify and were likewise time-barred. Fifth Third further argued that the Clarke siblings' claims were barred by the doctrine of laches, that the trust documents exculpated Fifth Third from any liability for retaining Standard Register stock, and that it had fulfilled its fiduciary obligations to the trusts.

{¶25} The Clarke siblings opposed Fifth Third's motion for summary judgment, and additionally filed their own motion for summary judgment "regarding

defendant's failure to diversify the trusts and failure to provide accurate accountings of the trusts' assets."[1]

{¶26} The trial court granted Fifth Third's motion for summary judgment and denied the motion filed by the Clarke siblings. In its judgment entry, the trial court found that the essence of all the Clarke siblings' claims was a breach of fiduciary duty for the failure to diversify and that the claims were filed outside of the four-year limitation period set forth in R.C. 5810.05. It further found that the Clarke siblings' claims were barred by the equitable doctrine of laches.

{¶27} The Clarke siblings have appealed, raising four assignments of error for our review. We address these assignments out of order.

### Standard of Review

{¶28} We review a trial court's grant of summary judgment de novo. *Grafton v. Ohio Edison Co.,* 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). Summary judgment is appropriately granted when there exists no genuine issue of material fact, the party moving for summary judgment is entitled to judgment as a matter of law, and the evidence, when viewed in favor of the nonmoving party, permits only one reasonable conclusion that is adverse to that party. *State ex rel. Howard v. Ferreri,* 70 Ohio St.3d 587, 589, 639 N.E.2d 1189 (1994).

---

[1] In the motion for summary judgment, the Clarke siblings argued that the claim for the breach of the duty to diversify was based on Fifth Third's violation of R.C. 5809.03(B), which provides that "[a] trustee shall diversify the investments of a trust unless the trustee reasonably determines that, because of special circumstances, the purposes of the trust are better served without diversifying." The motion acknowledged that this duty to diversify is the same as the duty previously recognized under Ohio common law in R.C. 1339.54(B). *See Wood v. U.S. Bank*, 160 Ohio App.3d 831, 2005-Ohio-2341, 828 N.E.2d 1072, ¶ 21 (1st Dist.) (recognizing that the common law duty to diversify was codified in R.C. 1339.54(B).

***Failure to Diversify***

**{¶29}** We begin our analysis with the Clarke siblings' third assignment of error, in which they argue that the trial court erred in granting summary judgment on their claim for breach of the duty to diversify based on the statute of limitations. They specifically contend that, after the conclusion of their 1986 lawsuit against Fifth Third, they had no knowledge that the trusts remained undiversified or that Fifth Third had breached the duty to diversify. They argue that they did not learn about the lack of diversification and breach of duty until they became income beneficiaries in 2015 and received documentation from Fifth Third regarding the trusts.

**{¶30}** R.C. 5810.05(C) provides:

If division (A) of this section does not apply, notwithstanding section 2305.09 of the Revised Code, a judicial proceeding by a beneficiary against a trustee for breach of trust must be commenced within four years after the first of the following to occur:

(1) The removal, resignation, or death of the trustee;

(2) The termination of the beneficiary's interest in the trust;

(3) The termination of the trust;

(4) The time at which the beneficiary knew or should have known of the breach of trust.[2]

**{¶31}** R.C. 5801.03 provides a general definition of what constitutes "knowledge" regarding trust issues. *See Zook v. JPMorgan Chase Bank Natl. Assn.*, 2017-Ohio-838, 85 N.E.3d 1197, ¶ 38 (10th Dist). It states that "a person has knowledge of a fact if any of the following apply: (1) The person has actual knowledge of the fact[;] (2) The person has received notice or notification of the

---

[2] The statute of limitations for a general breach of fiduciary duty is also four years. *See Meehan v. Mardis*, 1st Dist. Hamilton No. C-180406, 2019-Ohio-4075, ¶ 12; R.C. 2305.09.

fact[; or] (3) From all the facts and circumstances known to the person at the time in question, the person has reason to know the fact." R.C. 5801.03(A).

{¶32} The Clarke siblings claim that Fifth Third breached its duty to diversify from 1986 forward. The four-year limitations period thus began to run when the Clarke siblings either knew or should have known that the trusts remained undiversified, as they had insisted upon in 1986-1987, and that Fifth Third had breached the duty to diversify. *See Ross Sinclaire and Assoc., LLC v. Huntington Natl. Bank*, 2018-Ohio-661, 106 N.E.3d 866, ¶ 30 (10th Dist.). "[*C*]onstructive knowledge of facts, rather than *actual* knowledge of their legal significance, is enough to start the statute of limitations running under the discovery rule." *Cundall v. U.S. Bank*, 122 Ohio St.3d 188, 2009-Ohio-2523, 909 N.E.2d 1244, ¶ 30, quoting *Flowers v. Walker*, 63 Ohio St.3d 546, 549, 589 N.E.2d 1284 (1992).

{¶33} While all the Clarke siblings gave deposition testimony that they had no actual knowledge that the trusts remained undiversified, the record contains ample evidence that the Clarke siblings had constructive knowledge, if not actual knowledge, as of 2008. The evidence establishes that they should have known that the trusts remained concentrated in Standard Register stock as the family demanded by its prior lawsuit.

{¶34} The Clarke siblings received annual proxy statements from Standard Register from 1986 onward that set forth the number and percentage of shares held by the two trusts. These statements showed that, other than experiencing a stock split, the number of shares held by the trusts did not change. The percentage of shares held by the trusts likewise remained substantially the same from year to year. While this did not provide the Clarke siblings with knowledge as to the entire investment portfolio of the trusts, it gave them knowledge that the trusts had not been divested of Standard Register stock in any given year. And since this was the primary corpus of the trusts, unless other funding was being made, the percentage

11

would remain the same. And there is no evidence that the trusts had other sources of funding.

{¶35} In 2008, Fifth Third filed a Schedule 13D with the SEC after learning that Standard Register had rejected an offer to be purchased by Workflow One without consulting Fifth Third. The 13D clearly showed the number of Standard Register shares owned by the trusts. Also in 2008, Fifth Third scheduled a conference call for all current and remainder beneficiaries of the trusts to discuss the Schedule 13D filing and Fifth Third's concern about the trusts' concentration in Standard Register stock. Fifth Third's records indicated that both Bridget Murphy and Catherine Clarke participated in the call, although Murphy testified that she had no recollection of doing so. Fifth Third mailed a copy of the script that had guided the conference call to all beneficiaries. This script contained multiple statements regarding the public filing with the SEC and the trusts' lack of diversification. These statements included "out of an abundance of caution, we made this 13D filing to cover our obligations under securities laws and in case we decide to go further to protect our undiversified investment in the shares of Standard Register"; "[o]ne significant hurdle to consider in the diversification or sale of Standard Register historically has been the very high level of income paid to the current beneficiaries"; "[w]e would prefer the trust portfolios be diversified under the right circumstances"; and "[t]he 13D filing was essential in enabling us to communicate these views to the company."

{¶36} Following our review of the record, we find that under these collective circumstances, the Clarke siblings should have known by 2008 that the trusts remained undiversified and that Fifth Third had, according to them, breached the duty to diversify. The statute of limitations for a claim for a breach of the duty to diversity began running at that time. The Clarke siblings' claim, filed in 2015, was filed outside of the four-year limitations period set forth in R.C. 5810.05(C)(4).

{¶37} The Clarke siblings contend that R.C. 5810.05(C)(4) does not apply and that their claim was filed within the limitations period set forth in R.C. 5810.05(A), which provides that:

A beneficiary may not commence a proceeding against a trustee for breach of trust more than two years after the date the beneficiary, a representative of the beneficiary, or a beneficiary surrogate is sent a report that adequately discloses the existence of a potential claim for breach of trust and informs the beneficiary, the representative of the beneficiary, or the beneficiary surrogate of the time allowed for commencing a proceeding against a trustee.

The Clarke siblings argue that, pursuant to R.C. 5810.05(A), the limitations period began to run in 2015 when they first received a report from Fifth Third concerning the trusts which contained the disclosure that a claim against a trustee for breach of trust must be commenced within two years of receiving a report that adequately disclosed the existence of a potential claim.

{¶38} We find this argument to be without merit. R.C. 5810.05(C) sets forth a general four-year statute of limitations for breach of trust. R.C. 5810.05(A) puts a further limitation on that time period: if a beneficiary received a written report which discloses the potential claim for breach of trust, and the report contains the required statutory disclosure, the action must be brought within two years. R.C. 5810.05(A) does not extend the statute of limitations nor state that the statute does not begin to run until a report is sent. Rather, it shortens the four year statute to two years when a report is sent that discloses the potential breach and contains the disclosure. Here, the Clarke siblings should have known that Fifth Third had breached the duty to diversify by 2008, years before a report described in R.C. 5810.05(A) was sent. The statute of limitations set forth in R.C. 5810.05(C) accordingly controls in this case.

13

{¶39} The Clarke siblings further argue that "a statute of limitations cannot bar a claim relating to conduct that takes place after the date that the statute begins to run" and that the "part of the Clarke Siblings' failure-to-diversify claim that concerns Fifth Third's conduct after the limitations period began to run is not subject to a statute of limitations defense." They contend that if this court were to find that their claim for breach of the duty to diversify was filed outside of the limitations period, the claim still survives as to Fifth Third's conduct from 2011 onward (which encompassed the four-year period prior to the litigation being filed and was within the limitations period from that date). They claim Fifth Third failed to diversify throughout the period 2011 onward.

{¶40} The Clarke siblings rely on *Tibble v. Edison Internatl.*, ___ U.S. ___, 135 S.Ct. 1823, 191 L.Ed.2d 795 (2015), in support of their argument. In *Tibble*, the plaintiffs were beneficiaries of a 401(k) savings plan who had sued the plan fiduciaries for investing in six particular retail-class mutual funds, when identical lower priced institutional-class mutual funds were available for purchase. *Id.* at 1824. The Ninth Circuit Court of Appeals held that, because ERISA imposed a six-year statute of limitations on a breach-of-fiduciary-duty complaint, the plaintiffs' complaint was untimely as to three of the mutual funds because the plan had purchased them more than six years before the lawsuit was filed and there had not been a change in circumstances to trigger an obligation to review the funds. *Id.* at 1825. The United States Supreme Court vacated the Ninth Circuit's decision, holding that:

> [A] fiduciary normally has a continuing duty of some kind to monitor investments and remove imprudent ones. A plaintiff may allege that a fiduciary breached the duty of prudence by failing to properly monitor investments and remove imprudent ones. In such a case, so long as the alleged breach of the continuing duty occurred within six years of

14

suit, the claim is timely. The Ninth Circuit erred by applying a 6-year statutory bar based solely on the initial selection of the three funds without considering the contours of the alleged breach of fiduciary duty.

*Id.* at 1828-1829.

{**¶41**} We find *Tibble* to be distinguishable from the case at bar. First, *Tibble* was based on federal law. *See Cattau v. Natl. Ins. Servs. of Wisconsin, Inc.*, 383 Wis.2d 600, 918 N.W.2d 127, ¶ 36 (Wis.App.2018), fn. 13 (holding that *Tibble* was inapplicable because it was based on federal law and had addressed whether claims for a breach of fiduciary duty under ERISA were timely and not whether a fiduciary duty existed). Additionally, *Tibble* is factually distinguishable, as it contained no allegations that the plaintiffs were aware that the plan had purchased retail-class mutual funds, as opposed to identical lower priced institutional-class funds, and then sat on that knowledge for years before filing suit. Here, the Clarke siblings were constructively, if not actually, aware that the trusts were undiversified and that Fifth Third had potentially breached the duty to diversify by 2008, at the latest, and waited approximately seven years to file their complaint.

{**¶42**} Because the Clarke siblings filed their claim for breach of the duty to diversify outside of the applicable limitations period, the trial court did not err in granting summary judgment to Fifth Third on that claim. The third assignment of error is overruled.

### Gravamen of Remaining Claims

{**¶43**} In their first and second assignments of error, the Clarke siblings challenge the trial court's grant of summary judgment on their remaining claims. In the first assignment of error, they specifically argue that the trial court erred in

determining that their claims for charging excessive trustee fees and imprudently investing the trusts' assets were based on the same underlying misconduct as the claim for breach of the duty to diversify. And in the second assignment of error, they likewise argue that their claim that Fifth Third failed to accurately account for the trusts' holdings was supported by different allegations of misconduct than those supporting the claim for breach of the duty to diversify.

{¶44} The Clarke siblings' complaint did not contain claims for imprudent investment or failure to accurately account. In their complaint, the Clarke siblings raised claims for breach of the duty to diversify, breach of the duty of impartiality, breach of trust/fiduciary duty, and unjust enrichment. The claim for breach of the duty of impartiality was supported by the following allegations:

> Defendant-Trustee Fifth Third owed to the [Clarke siblings] the duty of impartiality during the time that they were residual beneficiaries. Defendant-Trustee Fifth Third failed to factor into its judgment regarding investment and non-diversification any weight at all to the interest of [the Clarke siblings]. Defendant-Trustee Fifth Third failed to communicate with them until it sent Fifth Third's 2014 letter to Beneficiaries.

And the claim for breach of trust/fiduciary duty alleged that:

> Defendant-Trustee Fifth Third owed to [the Clarke siblings] duties under the Trust, the Ohio Trust Code * * *, and/or the Common Law of Ohio, including but not limited to the fiduciary duties of utmost good faith, undivided loyalty including but not limited to avoidance [sic] conflict of interest and self-dealing, to act solely in their best interest, to use reasonable care and skill, to use the special skills it possessed and is deemed to possess as a professional Trustee, and to protect Trust property. Defendant-Trustee Fifth Third failed to factor into its

16

judgment regarding investments and non-diversification any weight at all to the interest of [the Clarke siblings]. Defendant-Trustee Fifth Third failed to communicate with them until late in 2014.

{¶45} But on appeal, the Clarke siblings have essentially relabeled their claims for breach of the duty of impartiality and breach of trust/fiduciary duty as claims for imprudently investing the trusts' assets and failing to accurately account for the trusts' holdings. They contend Fifth Third acted imprudently not by merely failing to diversify the trusts' holdings in Standard Register stock, but by investing any portion of the trusts' assets in that stock. And they contend that the failure-to-accurately-account claim is based on Fifth Third's failure to record accurate values for the trusts over a 14-year period. The complaint, which was never amended, is devoid of the allegations that the Clarke siblings rely on in this appeal in support of their claims.

{¶46} Courts must look to the "actual nature or subject matter of the case," rather than to the form in which the action is pled, to determine the applicable statute of limitations. *Freeman v. Durrani*, 1st Dist. Hamilton No. C-180197, 2019-Ohio-3643, ¶ 15, quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 183, 465 N.E.2d 1298 (1984). We consider the allegations in support of each claim as set forth in the complaint when determining whether the trial court erred in determining that the claims for breach of the duty of impartiality and breach of trust/fiduciary duty were essentially also claims for breach of the duty to diversify and were filed outside of the limitations period. In doing so, we agree with the trial court's determination that these two claims were in essence claims for a breach of the duty to diversify, as both claims were predominately supported by the allegation that Fifth Third failed to take the Clarke siblings' interest into account when making decisions regarding diversification.

17

{**¶47**} We hold that the trial court did not err in finding that the claims for breach of the duty of impartiality and breach of trust/fiduciary duty stemmed from the alleged failure to diversify and were barred by the statute of limitations.

{**¶48**} But we reach a different conclusion with respect to the Clarke siblings' claim for unjust enrichment. Although they refer to this claim on appeal as a claim for charging excessive trustee fees, the Clarke siblings rely on similar allegations to support the claim in both this appeal and the complaint. The complaint contained the following allegations in support of this claim:

> Defendant-Trustee Fifth Third obtained and continues to retain benefits to which it is not entitled, at the expense of [the Clarke siblings,] including but not limited to the fees which it took for the purposes of prudently managing Trust assets, which, given its abdication of its duties (particularly the duty to diversify), [were] fees it did not earn.

{**¶49**} The unjust-enrichment claim was based on Fifth Third's alleged improper taking of fees from the trust. Although the complaint alleges that one reason Fifth Third was not entitled to the fees was because it had failed to diversify the trusts, the misconduct alleged in this claim is separate from the allegations of misconduct supporting the claim for breach of the duty to diversify the trusts. We therefore hold that the trial court erred in finding that the unjust-enrichment claim stemmed from the claim concerning the failure to diversify.

{**¶50**} The second assignment of error is overruled. The first assignment of error is sustained in part and overruled in part.

*Laches*

**{¶51}** In their fourth assignment of error, the Clarke siblings argue that the trial court erred in granting summary judgment to Fifth Third on their failure-to-diversify claim based on the doctrine of laches.

**{¶52}** We decline to address this assignment of error, as it is rendered moot by our resolution of the third assignment of error, where we upheld the trial court's grant of summary judgment on the claim for breach of the duty to diversify because it was filed outside of the applicable limitations period.

*Conclusion*

**{¶53}** We affirm the trial court's grant of summary judgment to Fifth Third on the Clarke siblings' claims for breach of the duty to diversify, breach of the duty of impartiality, and breach of trust/fiduciary, as the claims were barred by the statute of limitations. But because the Clarke siblings' claim for unjust enrichment was supported by separate allegations of misconduct than those supporting the claim for breach of the duty to diversify, we reverse the trial court's grant of summary judgment on that claim. This cause is remanded for proceedings consistent with the law and this opinion.

Judgment affirmed in part, reversed in part, and cause remanded.

**MOCK, P.J.,** and **CROUSE, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.